RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0139p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ONEBEACON AMERICA INSURANCE
COMPANY,

*Plaintiff-Appellant,*

No. 10-4530

*v.*

AMERICAN MOTORISTS INSURANCE
COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 09-02979—John R. Adams, District Judge.

Argued: February 29, 2012

Decided and Filed: May 17, 2012

Before: COLE, GILMAN, and WHITE, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Patrick T. Walsh, HINKHOUSE WILLIAMS WALSH LLP, Chicago, Illinois, for Appellant. David L. Lester, ULMER & BERNE LLP, Cleveland, Ohio, for Appellee. **ON BRIEF:** Patrick T. Walsh, Sarah H. Dearing, HINKHOUSE WILLIAMS WALSH LLP, Chicago, Illinois, for Appellant. David L. Lester, ULMER & BERNE LLP, Cleveland, Ohio, for Appellee.

───────────────

**OPINION**

───────────────

COLE, Circuit Judge. OneBeacon American Insurance Company ("OneBeacon") and American Motorists Insurance Company ("AMICO") were insurers of the B.F. Goodrich Corporation ("Goodrich") and, among others, were liable for environmental cleanup at the Goodrich plant in Calvert City, Kentucky. AMICO settled

1

with Goodrich, but OneBeacon's predecessor, Commercial Union Insurance Company (hereinafter "OneBeacon"), refused to settle and went to trial. A state court jury found for Goodrich, and OneBeacon was ordered to pay $42 million in compensatory damages and $12 million in attorney fees. The state court also denied OneBeacon's request for settlement credits to reflect amounts paid by other insurers, such as AMICO, through settlements with Goodrich. OneBeacon then brought this action for equitable contribution in state court, which AMICO removed to federal court. The district court adopted the rationale reflected in the state court's settlement-credit decision and granted AMICO's motion for summary judgment. For the following reasons, we AFFIRM the judgment of the district court.

## I. BACKGROUND

None of the underlying facts are in dispute. In 1999, Goodrich filed a complaint against several insurers, including OneBeacon, in the Summit County, Ohio, Court of Common Pleas, contending that the insurers were contractually obligated to indemnify Goodrich against claims by the federal government for soil and groundwater contamination at Goodrich's Calvert City, Kentucky, plant. During the litigation, Goodrich settled with a number of insurers. Prior to the litigation, in 1995, Goodrich settled with AMICO, a primary insurer with which it had a $55 million policy. OneBeacon, an excess carrier that did not settle with Goodrich, had a policy that attached once AMICO's liability exceeded $20 million.

A jury verdict was returned against OneBeacon and its co-defendant, Certain London Market Insurance Companies ("Lloyd's"), in the amount of $42 million in compensatory damages, with a finding that Goodrich is entitled to attorneys' fees. The court also awarded prejudgment interest of $19.6 million on the compensatory damages, $12 million in attorney fees, and $3.2 million in past interest on the attorneys' fees. OneBeacon received a "set-off" of $20 million to reflect its position as an excess insurer. OneBeacon and Lloyd's were jointly and severally liable for the compensatory damages and 88% of the attorney fees. For the remaining 12%, OneBeacon was held solely liable

because the court concluded that it had engaged in bad faith in processing, investigating, or denying Goodrich's claim.

Following the jury verdict, OneBeacon sought settlement credits to reflect the coverage amounts that Goodrich had already received from the settling insurers. The trial court went out of its way to make clear that it was not considering OneBeacon's decision not to settle, since "[n]o party should be judicially punished for proceeding to trial." But the trial court went on to note that "well-established law does favor settlement" and that "[t]he basis for settlement credits is the foundational principle that an injured party should only receive compensation for the damages incurred. . . ." Ultimately, the trial court determined that the settlement agreements between Goodrich and the settling insurers, like AMICO, "include[d] and discharge[d] liabilities other than solely past costs incurred by B.F. Goodrich. They are resolving claims for future costs, terminating rights and defenses of both parties, concluding the litigation and risks associated with it, including future appeals, and importantly, providing finality and fiscal certainty."

The trial court thus decided that the universe of claims that AMICO and other insurers settled via their agreements with Goodrich was not coextensive with the claims for which OneBeacon was found liable. The trial court alternatively held that because the jury found OneBeacon to have acted in bad faith, such bad faith precluded the court from engaging in the equitable practice of granting settlement credits. The trial court noted that if OneBeacon "thinks it is entitled to contribution from other insurers, *let it proceed against them*."[1] (emphasis added).

OneBeacon did just that. After the Ohio Court of Appeals upheld the jury verdict and the trial court's denial of settlement credits, OneBeacon sought declaratory relief for equitable contribution from AMICO in the Summit County Court of Common Pleas. AMICO then removed the case to federal court on diversity grounds. The district court did not frame the issue in the same terms as the trial court, but contended that "[t]he

---

[1] Goodrich "targeted" OneBeacon for the entire amount awarded. Any claim that OneBeacon may have against Lloyd's is not at issue in this appeal.

underlying rationale for receipt of those [settlement] credits is identical to a claim of contribution—OneBeacon sought a determination that failure to apply settlement credits would result in an unequal distribution of the common liability of the insurers." The district went on to state that the instant complaint "serves as nothing more than an effort to evade the original trial court's determination that settlement credits were inappropriate," even though the trial court had effectively instructed OneBeacon to file an action for equitable contribution.

Ultimately, the district court held that the instant action was "a second bite at the apple" for OneBeacon and adopted the trial court's logic that the jury award and AMICO's coverage were not "one in the same." It also adopted the trial court's alternative holding that precluded OneBeacon from seeking equitable relief because it had acted in bad faith towards Goodrich, as determined by the jury in the state trial. Finally, the district court determined that Ohio law was not clear as to whether a non-settling insurer could seek contribution from a settling insurer, so it concluded that OneBeacon failed to uphold its burden of persuasion. The district court granted AMICO's motion for summary judgment, and this appeal followed.

## II. ANALYSIS

OneBeacon argues that the district court erred in holding that, under Ohio law, a targeted non-settling insurer has no right to seek contribution from a settling insurer. In response, AMICO argues that Ohio's expressed policy of favoring settlements requires an affirmance of the district court's judgment. And, that even if this were not the case, Ohio law forbids contribution actions between excess insurers and primary insurers. Finally, AMICO argues, even if Ohio law spoke in OneBeacon's favor on these issues, OneBeacon is still estopped from seeking equitable relief because it acted in bad faith, as determined by the state trial court. Because Ohio's policy favoring settlements provides us with sufficient guidance to conclude that a settled policy is exhausted for purposes of equitable contribution, we need not answer whether Ohio law permits interclass contribution actions or whether a jury's finding of bad faith bars equitable relief entirely.

A.  *Standard of Review*

We review the district court's grant of summary judgment de novo.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 894 (6th Cir. 2004).  Summary judgment is proper when there is no genuine dispute of material fact and the moving party, AMICO, is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  AMICO bears the initial burden of demonstrating the absence of genuine disputes of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If AMICO satisfies its burden, OneBeacon must then set forth the specific facts showing that there is a genuine dispute for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

In evaluating the evidence, we draw all reasonable inferences in favor of OneBeacon.  *Blackmore*, 390 F.3d at 895 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  But a mere scintilla of evidence in support of OneBeacon's position will be insufficient for its claim to survive summary judgment.  Rather, there must be enough evidence that the jury could reasonably find for the non-moving party.  *Anderson*, 477 U.S. at 251.

B.  *Equitable Contribution under Ohio Law*

OneBeacon contends that Ohio law permits targeted insurers to seek equitable contribution from non-targeted insurers in order to ensure that no one insurer is responsible for more than its fair share of the loss.  In support of this contention, OneBeacon cites to two Ohio cases holding that targeted insurers, like OneBeacon, may seek contribution from "responsible" non-targeted insurers with "applicable" policies: *Goodyear Tire & Rubber Co. v. Aetna Casualty & Surety Co.*, 769 N.E.2d 835 (Ohio 2002), and *Pennsylvania General Insurance Company v. Park-Ohio Industries, Inc.*, 902 N.E.2d 53 (Ohio Ct. App. 2008) (*Penn General I*).  These cases, OneBeacon argues, make clear that Ohio law permits contribution actions between insurers, and that the Ohio Supreme Court could have easily excepted settling insurers if it desired to do so.

Unsurprisingly, AMICO disagrees and directs our attention to the words "responsible" and "applicable" which the Ohio Supreme Court used to modify the types

of insurers from whom OneBeacon would be able to seek equitable contribution. AMICO argues that, under Ohio law, when an insurer settles with a policyholder, even if the settlement is for less than the policy limit, the underlying policy is exhausted. *See Triplett v. Rosen*, Nos. 92AP-816, 92AP-817, 1992 WL 394867, at *7 (Ohio Ct. App. Dec. 29, 1992) (finding that public policy considerations that generally favor settlements allowed a $300,000 policy to be "exhausted" even though the parties settled for only $200,000). AMICO is unable, however, to point to any Ohio case law indicating that an "exhausted" policy is not an "applicable" or "responsible" policy for equitable-contribution purposes or otherwise. Rather, AMICO points to the theoretical underpinnings of what "exhaustion" actually means, reiterating the established rule that a settled insurer with an exhausted policy is no longer liable to the policyholder. The natural extension of this rule, AMICO argues, is that it would be incongruous for a settled insurer's policy to be worthless to a policyholder, yet still a basis for equitable contribution by a non-settling insurer.

Whether Ohio law permits non-settling insurers to target settling insurers for equitable contribution has not been answered definitively by Ohio courts, but it has been answered by district courts within this circuit and by other circuit courts. "In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). "If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data." *Id.*

### 1. Ohio state-court cases

In *Goodyear*, the plaintiff sued a number of insurers seeking a declaratory judgment on claims for pollution-cleanup costs. 769 N.E.2d at 839. The Ohio Supreme Court considered two methods for allocating insurance coverage among the insurers. *Id.* at 840. The first approach, favored by the plaintiff, was an "all sums" approach in which the plaintiff may target one insurer, up to the limits of that insurer's policy, for full coverage of the loss. The targeted insurer may then seek contribution from the other

insurers for any amounts for which they are potentially responsible. This method places the onus on the targeted insurer, rather than on the policyholder. Under the second approach, the "pro rata" method, each insurer must pay only the portion of the claim for which it is deemed responsible. This places the burden on the policyholder to join all relevant parties in the lawsuit.

The Ohio Supreme Court adopted the "all sums" approach, noting that such a rule "promotes economy for the insured while still permitting insurers to seek contribution from other responsible parties when possible." *Id.* at 841. That Court further noted that "the insurers bear the burden of obtaining contribution from other applicable primary insurance policies as they deem necessary." *Id.*

In *Penn General I*, Park-Ohio, a coil manufacturer, sought coverage from its insurer, Pennsylvania General, for costs and claims arising out of asbestos exposure at various work sites. 902 N.E.2d at 55. Pennsylvania General sought equitable contribution from three non-targeted insurers (which had not settled), but the trial court denied that request because Park-Ohio and Pennsylvania General had failed to properly notify the other insurers of the claim. *Id.* at 57. The Ohio Court of Appeals reversed, finding that the *Goodyear* decision permitting equitable contribution under the all sums approach controlled, and that a decision leaving the whole of the claim obligation on Pennsylvania General would be inequitable. *Id.* at 58. That court further stated that "[s]ince the doctrine of contribution has its basis in the broad principles of equity, it should be liberally applied." *Id.* at 59. The Ohio Supreme Court affirmed, finding that the notification failure did not "result in prejudice to the nontargeted insurers." *Penn. Gen. Ins. Co. v. Park-Ohio Inds.*, 930 N.E.2d 800, 808 (Ohio 2010) (*Penn General II*).

AMICO asserts that neither case reveals a willingness to allow non-settling insurers to seek contribution from settling insurers and that such a reading is strained at best. In *Goodyear*, AMICO notes that the Ohio Supreme Court used the words "applicable" and "responsible" to describe the types of insurers from whom non-settling insurers can seek contribution, and it argues that we ought to give meaning to those words.

### 2. *Northern District of Ohio cases*

Although we have not addressed this issue, two decisions from district courts within the circuit have had the opportunity to do so. In *GenCorp, Inc. v. AIU Insurance Co.*, GenCorp, a polymer manufacturer, sought payment on claims arising from an environmental cleanup. 297 F. Supp. 2d 995, 997 (N.D. Ohio 2003), *aff'd* 138 F. App'x 732 (6th Cir. 2005). The action was against excess insurers because GenCorp had already settled with its primary insurers and some of its excess insurers. *Id.* at 998-99. The remaining excess insurers argued that because the combined limits of the settled insurers' policies exceeded GenCorp's claim liability, their excess policies should not be triggered. *Id.* at 1000. Alternatively, the excess insurers argued that if they were liable, they ought to receive settlement credits for the full amount of all policy coverage available under the settlements, rather than the actual amounts of the settlements. *Id.*

The district court rejected these arguments, holding that "[t]he settlements extinguished all claims . . . against the primary insurers. The excess insurers, therefore, cannot seek contribution from GenCorp's primary insurers because those insurers have no remaining liability to GenCorp." *Id.* at 1007. OneBeacon seeks to distinguish *GenCorp* by pointing to statements from that decision that allude to the inequity that results from requiring a carrier to pay for more than its bargained-for share of liability. But no court is asking OneBeacon to pay more than its contracted-for share of liability; any amount that OneBeacon would pay, settlement credits or not, would be less than or equal to its policy limit.

Another court in the Northern District of Ohio adopted a similar view in *Bondex International, Inc. v. Hartford Accident & Indemnity Co.*, a case in which the policyholder sought payment on claims arising from asbestos-related injuries. No. 1:03-CV-01322, 2007 WL 405938, at *1 (N.D. Ohio Feb. 1, 2007). The insurers refused to pay because the named insured parties were the successors to the tortfeasors, and not the tortfeasors themselves. *Id.* Colony, a primary insurer, settled with the policyholder. *Id.* at *1-2. A group of non-settling insurers then sought contribution from Colony. *Id.* The district court found for Colony, basing its decision on Ohio's policy "supporting the

finality and encouragement of settlements, even if upholding such a settlement creates a detriment to non-settling parties." *Id.* at *4 (citing *Krischbaum v. Dillon*, 567 N.E.2d 1291, 1301-02 (Ohio 1991)). Allowing such contribution, the district court found, would undermine the finality of settlements. *Id.* The court further found that non-settling insurers may still seek settlement credits to reflect amounts paid out by settling insurers, such that the policyholder does not receive a windfall and the non-settling insurer is not liable for more than its contracted-for share of liability. *Id.* This Court affirmed on other grounds. *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669 (6th Cir. 2011).

OneBeacon argues that *Bondex* is distinguishable because the parties there were permitted to seek settlement credits, whereas the state trial court's decision here precluded settlement credits. OneBeacon does not, however, explain why the legal analysis in *Bondex* should change based on whether the targeted insurer was previously granted settlement credits. The district court in *Bondex* did state, in dicta, that the Colony settlement "should reduce whatever award is made against [the non-settling insurers]," 2007 WL 405938, at *4, but the question presented in this case is not whether OneBeacon ought to be able to receive a credit to reflect AMICO's settlement, but whether OneBeacon ought to receive actual financial contributions from AMICO. The district court's dicta in *Bondex* is not applicable to the instant proceeding.

### 3. Other federal cases

AMICO, like the district courts in *Bondex* and in this case, cites to a Third Circuit case, *Koppers Co., Inc. v. Aetna Casualty & Surety Co.*, in support of its position. 98 F.3d 1440 (3d Cir. 1996). In *Koppers*, the plaintiff entered into settlement agreements with several of its primary insurers, leaving only excess insurers as litigating defendants. *Id.* at 1443. The district court eventually found for the plaintiff, holding the excess insurers liable for the full amount of the claim and, as here, did not reduce the verdict to account for the prior settlements. *Id.* On appeal, the Third Circuit agreed with the defendant-insurers that the district court erred when it did not grant the defendants settlement credits. *Id.* at 1449.

The Third Circuit noted that in order to preclude a double recovery by the plaintiff, and to ensure that no one insurer pays more than its fair share, the court "must either (1) reduce the judgment to account for the settling insurers' apportioned shares of liability, or (2) permit the non-settling insurers to seek contribution from the settling insurers and, in turn, permit the settling insurers to seek reimbursement from [the plaintiff]." *Id.* at 1452. The Third Circuit predicted that the Pennsylvania Supreme Court would choose the former rule, commonly referred to as the "apportioned share set-off rule," or settlement credits. *Id.* In doing so, that court effectively barred non-settling insurers, like OneBeacon, from seeking equitable contribution from settling insurers, like AMICO. Such contribution, that court reasoned, "would defeat the finality of the settlement" between the settling insurer and the policyholder. *Id.* at 1453. The Third Circuit also held, which AMICO urges us to do as well, that a settlement with a primary insurer "exhausts" the coverage and triggers the excess policy. *Id.* at 1454. This rule "encourages settlement and allows the insured to obtain the benefit of its bargain with the excess insurer, while at the same time preventing the insured from obtaining a double recovery." *Id.* Under this rule it is the insured, rather than the excess insurer, that must make up the loss between the settlement amount and the underlying policy limit. *Id.*

OneBeacon notes that the Second Circuit rejected this position in *Maryland Casualty Co. v. W.R. Grace & Co.*, 218 F.3d 204, 208-12 (2d Cir. 2000). But OneBeacon fails to acknowledge that all of the litigating parties in *W.R. Grace*—the ones seeking contribution and those from whom contribution was sought—had already settled with the insured and that the appellants' contribution claim ultimately failed. *Id.* at 208. The Second Circuit did note, however, that "[t]he notion that any settlement by which an insurer obtains a release from its insured, regardless of its terms, insulates that insurer from all contribution claims, is untenable." *Id.* at 210. That court went on to conduct an analysis of the equities, attempting to answer "whether one party [was] unjustly enriched at the expense of another . . . ." *Id.* at 212.

*W.R. Grace* does not discuss whether the underlying state law, New York's, favored policies that encouraged settlement.[2] And, the Second Circuit declined to adopt OneBeacon's main argument when it reviewed the district court's decision in that case. The district court, in citing to a state-court decision, noted that the state-court case "establish[ed] nothing beyond the undisputed principle that a paying insurer can recover from a non-paying insurer." *Id.* at 209 (citation omitted). Here, OneBeacon argues that this "undisputed principle" *also* stands for the proposition that a non-settling insurer may seek contribution from a settling insurer. The Second Circuit, presented with this principle, could have based its decision on this alternative rationale, but chose not to do so.

\* \* \*

Based on decisions by the Ohio courts and the logic expressed in *GenCorp*, *Bondex*, and *Koppers*, we agree that settlement can exhaust a settling insurer's policy, and that such exhaustion precludes a non-settling insurer from seeking equitable contribution from the settling insurers. Such a position best comports with the Ohio Supreme Court's proposition that

> [t]he law favors prevention of litigation by compromise and settlement. Given the explosion of litigation so characteristic of the modern era, it is essential that the settlement of litigation be facilitated, not impeded. So long as there is no evidence of collusion, in bad faith, to the detriment of other, non-settling parties, the settlement of litigation will be encouraged and upheld.

*Krischbaum*, 567 N.E.2d at 1302 (internal citations and quotation marks omitted). Our conclusion also receives support elsewhere in Ohio law. *See* Ohio Rev. Code § 2307.28(B) ("The release or covenant discharges the person to whom it is given from all liability for contribution to any other tortfeasor."). A decision allowing OneBeacon to pursue equitable contribution from AMICO would not only fail to encourage

---

[2]Additionally, "New York has not adopted a rule of common law that imposes either" the all sums or pro-rata approach. *Viking Pump, Inc. v. Century Indem. Co.*, No. 1465-VCS, 2009 WL 3297559, at \*20 (Del. Ch. 2009). *But cf. Consol. Edison Co. of NY v. Allstate Ins. Co.*, 774 N.E.2d 687 (N.Y. 2002) (applying a pro rata approach to the facts of that case).

settlements, it would actively discourage such settlements. An insurer would have no incentive to settle with a policyholder if it knew that it would be liable to another insurer down the road. And an insurer considering going to trial would be economically rational in doing so if the expected value of prevailing at all exceeds the expected cost of defending the lawsuit.

Normally, as in *Koppers*, the reviewing court may reduce the amount of the underlying verdict to reflect settlement credits because both the decision against the excess insurer and the action for contribution emanate from the same litigation. Here, Ohio state courts made and affirmed the decision to preclude OneBeacon from receiving settlement credits, and those decisions are not before this Court for review. To grant OneBeacon's request for equitable contribution would require AMICO to pay more than its fair share, because it will be liable to both Goodrich (per the settlement agreement) and OneBeacon. A consequence of such a decision would be to reduce drastically the incentives currently in place encouraging parties to settle. The stability of existing settlement agreements between insurers and policyholders would be called into question, spawning a never-ending series of contribution and indemnification disputes. Given the Ohio Supreme Court's above-quoted rule, a reversal of the district court's judgment would run against what the Ohio Supreme Court would likely do if faced with this question.

Simply put, adopting OneBeacon's position would fundamentally undermine current settlements and discourage future settlements. Because a settled policy is exhausted for purposes of equitable contribution under Ohio law, we need not address AMICO's other bases for affirmance.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.