*Selective Way Insurance Co. v. Fireman's Fund Insurance Company, et al.*, No. 753, Sept. Term 2021.  Opinion by Arthur, J.

**EQUITABLE CONTRIBUTION AMONG INSURERS – EFFECT OF SETTLEMENT AGREEMENT**

Under the doctrine of equitable contribution, a primary insurer that pays more than its proportionate share of the costs of defending a lawsuit against an insured may have a right of contribution from other insurers that provided primary liability insurance coverage to the same insured.  This right of contribution belongs to each insurer individually and exists independently of the contractual rights of the insured. Accordingly, a settlement agreement that absolves a settling insurer of its contractual obligations to the insured does not extinguish the rights of other insurers to receive equitable contribution from the settling insurer.

**EQUITABLE CONTRIBUTION AMONG INSURERS – SCOPE OF CONTRIBUTION RIGHT**

In this case, an insurer brought an action seeking contribution from other alleged insurers of a common insured.  First, the plaintiff insurer sought contribution with respect to its liability for defense costs in an underlying lawsuit against the insured.  Second, the plaintiff insurer sought contribution with respect to its liability for attorneys' fees and other costs incurred in a separate action to establish that the plaintiff insurer breached its duty to defend.  The circuit court determined that the plaintiff insurer was not entitled to receive contribution with respect to that second amount.

The Appellate Court of Maryland upheld that determination.  In challenging that determination, the plaintiff insurer provided only a conclusory argument without sufficient legal support.  The authorities relied on by the plaintiff insurer failed to establish that its claimed right of contribution should extend beyond the alleged common obligation for defense costs to include the fees and costs incurred in a separate action to establish that an insurer breached its duty to defend.

**EQUITABLE CONTRIBUTION – RIPENESS**

Under Maryland law, a contribution claim accrues when the party seeking contribution has actually paid more than its proportionate share of an alleged common obligation. Alternatively, a contribution claim may accrue when a judgment is entered against the party for more than its share of an alleged common obligation.

In this case, an insurer brought an action seeking contribution from other insurers after the insurer had been ordered to pay (but had not actually paid) the costs of defending an underlying lawsuit.  The order imposing liability on the insurer lacked the full force and

effect of a final judgment because the total amount of the insurer's liability for breach of its duty to defend had not yet been determined.

Under these circumstances, although the contribution claim was not fully ripe, the circuit court was not required to dismiss the contribution action. The court, in its discretion, could decide whether it should stay the action pending either actual payment of the alleged common obligation or the entry of a judgment imposing liability against the insurer seeking contribution. Alternatively, the court could allow the contribution action to proceed in some fashion and to resolve any issues in the contribution action that do not depend on a final resolution of the other action against the insurer.

Circuit Court for Baltimore County
Case No. C-03-CV-20-001121

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 753

September Term, 2021
_____

SELECTIVE WAY INSURANCE COMPANY

v.

FIREMAN'S FUND INSURANCE
COMPANY, ET AL.
_____

Berger,
Arthur,
Kenney, James A., III
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Arthur, J.
_____

Filed:  February 2, 2023

* Albright, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Gregory Hilton, Clerk

*At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland.  The name change took effect on December 14, 2022.

This appeal principally concerns the doctrine of equitable contribution, as it applies among liability insurers that have a common obligation to defend the same insured.

The parties to this case are liability insurance companies that did not provide a defense for a common insured in an underlying lawsuit. All of those insurers, except one, settled claims against them for an alleged breach of a contractual duty to defend the insured. The non-settling insurer proceeded to trial, at which a jury found it liable for $994,719.54 of defense costs from the underlying lawsuit. The non-settling insurer received a $588,152.00 credit against the judgment amount to account for payments made by other insurers for the settlements of the claims against them.

The non-settling insurer brought a separate action against the other insurers in the Circuit Court for Baltimore County. The non-settling insurer alleged that the amount of defense costs that it has been ordered to pay exceeds its proportionate share of the defense obligation to the insured.

The circuit court entered summary judgment against the non-settling insurer. The court concluded that the contribution claim must fail because the settling insurers had already been released from their contractual obligations before the non-settling insurer asserted the contribution claims.

The non-settling insurer took this appeal. For the reasons discussed in this opinion, we reverse the judgment in part. Although the non-settling insurer might not necessarily prevail on its equitable contribution claim, we cannot uphold the grant of summary judgment on the ground on which the circuit court relied.

FACTUAL AND PROCEDURAL BACKGROUND

**A.     The Underlying Construction-Defect Lawsuit**

From 2001 to 2004, Questar Builders, Inc., oversaw the construction of an apartment complex in Baltimore County.  During that time, Questar maintained liability insurance coverage from Nationwide Mutual Insurance Co. and Nationwide Property Casualty Insurance Co. (collectively, "Nationwide").

As the general contractor for the project, Questar entered into contracts with various subcontractors.  These contracts required each subcontractor to indemnify Questar from claims for damages resulting from the subcontractor's work, to maintain liability insurance with "primary and noncontributory" coverage, and to name Questar as an "additional insured[]" on those policies.  Many subcontractors complied with these requirements.  Thus, in addition to the liability insurance coverage that Questar maintained with Nationwide, Questar became an additional insured under various liability insurance policies maintained by its subcontractors.

In 2006, the purchaser of the apartment complex sued Questar, alleging that Questar did not properly oversee the construction project.[1]  After initially refusing to defend the lawsuit, Nationwide agreed to defend Questar under a reservation of rights.  Nationwide appointed counsel to represent Questar and paid all of the attorneys' fees incurred in defending the construction-defect litigation.  Several months later, counsel for Questar gave notice of the lawsuit to various insurers for Questar's subcontractors and

---

[1] *Highpointe Business Trust, et al. v. Questar Builders, Inc., et al.*, No. 03-C-06-007333 in the Circuit Court for Baltimore County.

made requests for defense and indemnification from those insurers. Ultimately, Questar resolved the construction-defect lawsuit through a settlement in 2009, after incurring approximately $1 million in attorneys' fees and other defense costs.

## B. Declaratory Judgment Action Against Other Insurers

In 2008, Nationwide initiated a declaratory judgment action in the Circuit Court for Baltimore County against various subcontractors that had performed work for Questar and against various insurance companies that allegedly insured those subcontractors.[2] Nationwide alleged that each of the subcontractors' insurers breached a contractual duty to defend Questar in the construction-defect lawsuit.

Nationwide contended that each of the subcontractors' insurers provided primary liability insurance coverage to Questar. Nationwide claimed that it became subrogated to Questar's rights against those insurers when it paid for Questar's defense. Nationwide sought reimbursement from those insurers for all attorneys' fees and expenses that Nationwide had paid for the defense of Questar in the construction-defect lawsuit. Nationwide also sought reimbursement for the attorneys' fees and expenses incurred in prosecuting the declaratory judgment action.[3]

---

[2] *Nationwide Prop. & Cas. Ins. Co., et al. v. Am. Empl'rs Ins. Co., et al.*, No. 03-C-08-006273 in the Circuit Court for Baltimore County.

[3] The recoverable damages for a liability insurer's breach of its duty to defend are "the insured's expenses, including attorney fees, in defending the underlying tort action, as well as the insured's expenses and attorney fees in a separate contract or declaratory judgment action . . . to establish that there exists a duty to defend." *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 264 (1999). If another insurer "steps in to provide the defense" that a breaching insurer was primarily obligated to provide, the defending insurer becomes subrogated to the insured's rights against the breaching insurer. *See*

3

According to Nationwide, the insurers that had a duty to defend Questar under one or more policies issued to Questar's subcontractors included: American Fire and Casualty Co., American Home Assurance Co., Cincinnati Insurance Co., Continental Casualty Co., Harford Mutual Insurance Co., Montgomery Mutual Insurance Co., Mutual Benefit Insurance Co., Ohio Casualty Insurance Co., Penn National Mutual Insurance Co., Selective Way Insurance Co., Twin City Fire Insurance Co., and West American Insurance Co.

In May 2009, shortly after the resolution of the construction-defect lawsuit, Nationwide agreed to settle its claims against Harford Mutual Insurance Co. (as well as its affiliate, Firstline National Insurance Co.). The record does not disclose the amount for which Nationwide agreed to settle its claims against those two companies.[4] The agreement did not include provisions specifying the effect of the settlement on any claims by or against the other defendant insurers.

In December 2009, counsel for Twin City Fire Insurance Co. filed a proposed stipulation among the remaining parties to the declaratory judgment action. The stated purpose of the stipulation was to permit any defendant to settle with Nationwide "without

_____

*Travelers Indem. Co. v. Ins. Co. of North America*, 69 Md. App. 664, 679-80 (1987). In those circumstances, the defending insurer is entitled to recover the "expenses and attorney's fees incurred in defending the underlying [suit] and in prosecuting [a] declaratory judgment" action against the breaching insurer. *Rentals Unlimited, Inc. v. Aetna Cas. & Sur. Ins. Co.*, 101 Md. App. 652, 664 (1994).

[4] In its brief, appellant Selective Way Insurance Co. asserts that Nationwide settled its claims against those defendants for less than $3,000.00. In support of that assertion, Selective Way cites an assertion made by its own attorney during a motions hearing. The factual basis, if any, for this assertion is not apparent from the record.

4

thereafter being subject to contribution or indemnity claims by non-settling defendants."

Under the proposal, each defendant would promise not to assert any "claim for contribution or indemnity, whether brought as a cross claim in th[e] action or otherwise," against any defendant that reached a settlement with Nationwide. For each separate policy as to which Nationwide settled its claims, Nationwide would reduce its total damages claimed in the action by the settlement amount or $20,000.00, whichever was greater. For reasons that are not disclosed by the record, the parties did not agree to this proposed stipulation.

## C.  Settlements with and Settlement Offers to Other Insurers

In September 2011, Nationwide entered into a settlement agreement with four defendants: American Home Assurance Co., Cincinnati Insurance Co., Continental Casualty Co., and Twin City Fire Insurance Co.

The September 2011 settlement agreement included provisions concerning potential claims for contribution or indemnity brought by or against the settling insurers. The four settling insurers agreed not to "institute an action to enforce any rights of contribution, indemnification, subrogation or similar relief" against the other defendant insurers. Nationwide promised that it would not settle with any other defendant insurer unless the settlement agreement included a "substantially identical" provision requiring the settling insurer "not to seek reimbursement from and not to assert an indemnification, contribution, subrogation, or other similar action" against the other insurers. In addition, Nationwide promised that, in the event that a non-settling insurer might obtain a judgment for contribution or indemnity against a settling insurer, Nationwide would

5

reduce its judgment against that non-settling insurer to reflect the settlement payments made to Nationwide.

As a condition of the September 2011 settlement agreement, Nationwide promised to provide a written statement of its willingness to settle with all other defendant insurers. In accordance with that promise, Nationwide extended an offer to seven remaining defendants: American Fire and Casualty Co., Montgomery Mutual Insurance Co., Ohio Casualty Insurance Co., West American Insurance Co., Mutual Benefit Insurance Co., Penn National Mutual Insurance Co., and Selective Way Insurance Co. Nationwide offered to settle its claims against any of those defendants on what it called "the same terms" as the terms of the September 2011 settlement agreement, except for a relatively small increase in the settlement payments to account for additional attorneys' fees incurred after that settlement.

At the time of the uniform settlement offer, Nationwide was seeking to recover a total of $1,002,142.00 of defense costs from the construction-defect lawsuit and $566,983.00 of attorneys' fees and expenses incurred in prosecuting the declaratory judgment action. Nationwide offered to dismiss its claims against any defendant in exchange for payment of "65% of the *pro rata* per policy share of the total" damages claimed. Nationwide identified 34 separate "applicable policies" under which, it claimed, a defendant insurer was liable for reimbursement.[5] Nationwide determined the "total

---

[5] Under the proposal, each "policy" represents one year of liability insurance coverage. If an insurer provided coverage for two consecutive years under the same policy number, Nationwide attributed two policies to that insurer.

share per applicable policy" by calculating 65 percent of the total damages claimed and dividing that amount among the "applicable policies" of the defendant insurers. Using that method, Nationwide offered to settle its claims with respect to any defendant's insurance policy in exchange for the payment of $29,998.00 per policy. That amount included $19,159.00 for defense costs in the construction-defect lawsuit and $10,839.00 for the costs of prosecuting the declaratory judgment action.

The uniform settlement offer included provisions concerning potential claims for contribution or indemnity that were identical to provisions from the September 2011 settlement agreement. Specifically, any settling insurer would promise not to assert claims for contribution or indemnity against other settling insurers. Nationwide would promise not to settle with any insurer unless the settlement agreement included an identical promise by the settling insurer. In addition, Nationwide would make the same type of reduction in the amount of a judgment against a non-settling insurer to reflect the settlement payments made to Nationwide.

Although the uniform settlement offer expired after 60 days, Nationwide later reached settlements with all but one of the remaining defendant insurers. In each instance, the settlement agreements included substantially the same provisions requiring the settling insurers to waive claims for contribution or indemnity against the other insurers and the provisions conditionally requiring Nationwide to reduce the amount of its judgment against any non-settling insurer.

Nationwide reached a settlement agreement with Mutual Benefit Insurance Co. in July 2013. Although Nationwide had previously claimed that Mutual Benefit Insurance

7

Co. was liable under three separate policies, Nationwide agreed that only two of those policies were "potentially applicable." Nationwide agreed to settle its claims with respect to those policies for $29,998.00 per policy, the same rate used in the uniform settlement offer.

Meanwhile, the declaratory judgment action proceeded slowly toward judicial resolution. In August 2014, the circuit court granted Nationwide's motion for partial summary judgment as to the liability of the remaining defendants. The court determined that the insurers that were the subject of Nationwide's motion each had a contractual duty to defend Questar in the construction-defect lawsuit.[6] The court concluded, however, that there were still genuine disputes of fact regarding other issues, including whether the defendant insurers had suffered prejudice because they received delayed notice of the lawsuit against Questar.

Nationwide settled its claims against Penn National Mutual Insurance Co., Pennsylvania National Mutual Casualty Insurance Co., and Penn National Security Insurance Co. in August 2015. The agreement stated that, as Nationwide had previously claimed, ten separate policies issued by the Penn National defendants were potentially applicable. Nationwide agreed to settle its claims with respect to those policies at the rate of $22,500.00 per policy.

In March 2016, Nationwide reached a settlement agreement with four more

---

[6] Nationwide had first moved for summary judgment as to the liability of 12 defendant insurers in 2009. Some of those insurers had already been dismissed from the case before the court made its ruling.

defendants: American Fire and Casualty Co., Montgomery Mutual Insurance Co., Ohio Casualty Insurance Co., and West American Insurance Co.  Although Nationwide previously asserted that Montgomery Mutual Insurance Co. was liable under two separate liability insurance policies, Nationwide now agreed that one of those policies was "not potentially applicable."  The record does not disclose the amount for which Nationwide agreed to settle its claims against those defendants.

In accordance with its settlement agreements, Nationwide voluntarily dismissed its claims against the settling insurers.  One defendant, Selective Way Insurance Co., did not reach any settlement agreement with Nationwide.  The action proceeded to trial against Selective Way alone.

D.    **Judgment Against Selective Way and Partial Reversal**

In March 2017, the circuit court conducted a jury trial on Nationwide's claim against Selective Way for the reimbursement of attorneys' fees and other costs of defending the construction-defect lawsuit.  Selective Way continued to contest whether it was liable for any defense costs and, if so, whether it should be held liable for all defense costs or only a small fraction of those costs.  The jury determined that Nationwide had proven damages in the amount of $994,719.54.[7]

After the verdict, the clerk of the circuit court sent notice of the entry of a "judgment" against Selective Way in the amount of $994,719.54.  Selective Way filed a

_____

[7] At the time of the 2011 settlement offer, Nationwide claimed that Selective Way had issued nine applicable policies to Questar's subcontractors.  If Selective Way had accepted that offer, Selective Way could have settled all of Nationwide's claims against it for the total amount of $269,982.00.

9

notice of appeal, but this Court dismissed that appeal as premature, because the circuit court had not yet adjudicated Selective Way's liability for the attorneys' fees and costs incurred by Nationwide in establishing that Selective Way breached its duty to defend.

When the case returned to the circuit court, Nationwide submitted a request for an award of $430,534.82 of prejudgment interest on the damages awarded by the jury. Nationwide also moved for an order requiring Selective Way to pay $810,556.72 for the attorneys' fees and expenses that Nationwide had incurred in prosecuting the declaratory judgment action against Selective Way and the other defendants. Over the objections of Selective Way, the court granted both requests in full.

The circuit court issued a declaratory judgment stating that Selective Way owed a duty to defend Questar in the construction-defect lawsuit under policies issued to Questar's subcontractors covering 13 separate policy periods.[8] The court reduced the total amount of liability by $588,152.00, to account for the amounts that Nationwide had already received from settlements with other defendant insurers.[9]

Selective Way appealed to this Court, disputing the correctness of the declaratory judgment and all components of the damages award. *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. 688, 708 (2019). This Court upheld the

---

[8] At the time of the 2011 settlement offer, Nationwide, in an apparent offer in compromise, asserted that only nine of those 13 policies were "potentially applicable."

[9] The order provides for a single reduction from the total amount of liability. The order does not specify how much should be subtracted from the award of defense costs from the construction-defect lawsuit and how much should be subtracted from the award for the costs of prosecuting the declaratory judgment action.

10

determination that Selective Way had a duty to defend Questar in the construction-defect lawsuit. *Id.* at 723. This Court further affirmed the judgment with respect to Selective Way's liability for $994,719.54 of defense costs from the construction-defect lawsuit. *Id.* at 708-09.

This Court concluded, however, that the circuit court erred when it added prejudgment interest to the damages, where no claim for prejudgment interest had been presented to the jury. *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. at 741-48. This Court reversed the judgment with respect to the award of prejudgment interest in the amount of $430,534.82. *Id.* at 748.

Finally, this Court vacated the judgment with respect to Selective Way's liability for $810,556.72 of attorneys' fees and expenses incurred in prosecuting the declaratory judgment action. *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. at 755. This Court remanded the matter for a jury trial to determine the amount of attorneys' fees and expenses incurred in the declaratory judgment action as a result of Selective Way's breach of contract. *Id.* at 760.

Selective Way petitioned for certiorari, once again challenging its liability for $994,719.54 of defense costs from the construction-defect lawsuit. The Supreme Court of Maryland (at that time named the Court of Appeals of Maryland)[10] denied Selective Way's petition.

---

[10] By constitutional amendment, the State's highest court was renamed the Supreme Court of Maryland effective December 14, 2022. The amendment changed the name of the State's intermediate appellate court from the Court of Special Appeals of Maryland to the Appellate Court of Maryland.

Nationwide also petitioned for certiorari, seeking to reinstate the award of prejudgment interest in the amount of $430,534.82. The Court granted Nationwide's petition. *Nationwide Prop. & Cas. Ins. Co. v. Selective Way Ins. Co.*, 473 Md. 178, 188 (2021). Ultimately, the Court upheld the reversal of the award of prejudgment interest on the defense costs awarded by the jury. *Id.* at 201.

Currently, Nationwide's declaratory judgment action against Selective Way remains pending in the circuit court. In the aftermath of the two appellate decisions, Selective Way is liable to Nationwide in the amount of $994,719.54 for defense costs in the construction-defect lawsuit, without prejudgment interest on that amount. Nationwide's claim against Selective Way to recover certain attorneys' fees and expenses incurred in the declaratory judgment remains unresolved. According to the docket entries, no trial has been scheduled for that remaining claim. In addition, after the court determines the final amount of Selective Way's liability to Nationwide, the total amount will be reduced by $588,152.00 to account for the settlement payments made by the other defendants in the declaratory judgment action.

## E. Selective Way's Action for Contribution and Other Relief

In March 2020, Selective Way filed a complaint in the Circuit Court for Baltimore County, asserting claims against 26 other insurance companies.[11] The complaint described the action as one "for contribution and other relief including but not limited to restitution and declaratory relief[.]" The complaint also named the two Nationwide

---

[11] *Selective Way Ins. Co. v. Fireman's Fund Ins. Co., et al.*, No. C-03-CV-20-001121 in the Circuit Court for Baltimore County.

12

entities as "potentially interested parties" with respect to the claim for declaratory relief.

In its complaint, Selective Way asserted that the action arose from "a judgment secured by Nationwide" for defense costs from the construction-defect lawsuit. Selective Way alleged that each of the defendant insurance companies had a "joint and several duty to defend Questar" in the construction-defect lawsuit under insurance policies issued to subcontractors of Questar. Selective Way alleged that those defendants were "jointly and severally liable . . . for the judgment entered" against Selective Way.

The complaint raised two counts against each of the defendant insurance companies. In the even-numbered counts, Selective Way alleged that each defendant insurer had been "unjustly enriched" by its refusal to defend Questar in the construction-defect lawsuit and "owe[d] restitution" to Selective Way. In the odd-numbered counts, Selective Way alleged that a judgment had been entered against Selective Way "for more than its proportionate share of the defense costs and fees" from the construction-defect lawsuit. Selective Way claimed that each defendant "owe[d] . . . contribution" to Selective Way for the defendant's "share (not to exceed 50%) of the judgment entered" against Selective Way. Selective Way further claimed that it was entitled to contribution from each defendant "for any amounts awarded" under Nationwide's "ongoing claim" against Selective Way to recover the costs of prosecuting the declaratory judgment action.

In the final count, Selective Way asked for a declaration stating that each defendant "had a joint and several duty to provide primary coverage and to defend Questar" in the construction-defect lawsuit. Selective Way asked the court to declare that

13

each defendant was "jointly and severally liable under principles including contribution, legal, contractual and/or equitable subrogation and/or restitution." From each defendant, Selective Way demanded "a proportionate share" of the "judgment entered" against Selective Way for defense costs from the construction-defect lawsuit and "a proportionate share" of "any amounts awarded" to Nationwide for the attorneys' fees and costs incurred in prosecuting the declaratory judgment action.

Although the complaint included claims against 26 different insurers, many of the named defendants never filed any responsive pleadings. Of those 26 named defendants, 14 filed motions to dismiss for failure to state a claim upon which relief can be granted. The two Nationwide defendants also filed their own motion to dismiss.

One of the motions to dismiss (filed by Ohio Casualty Co., Montgomery Mutual Insurance Co., American Fire and Casualty Co., and West American Insurance Co.) asked the court, in the alternative, to stay the action.[12] Those defendants argued that Selective Way's claims were "premature" because Selective Way was still litigating the claims against it in the declaratory judgment action and because Selective Way had not yet made any payment to Nationwide.

In their various motions, all defendants contended that Selective Way had no right of reimbursement with respect to its (still undetermined) liability for attorneys' fees and costs that Nationwide incurred in prosecuting the declaratory judgment action against

---

[12] Harford Mutual Insurance Co. and Firstline National Insurance Co. joined the request for a stay. American Home Assurance Co. adopted the arguments from the motion requesting a stay. Other moving defendants did not join or adopt the request for a stay.

14

Selective Way.[13]  The defendants argued that Selective Way's liability for fees and costs resulting from its own breach of contract was not a shared obligation with other insurers.

In most of the motions to dismiss, the defendants also moved, in the alternative, for summary judgment in their favor.  While their arguments varied, one frequent point of emphasis was the effect of the settlements in the declaratory judgment action.  The defendants provided copies of their settlement agreements with Nationwide (redacted in some cases), copies of the stipulations of dismissal from the declaratory judgment action, and copies of the settlement offer that Nationwide made to Selective Way and other insurers in 2011.

The defendants also relied on an affidavit from Steven Leder, the attorney who had represented Nationwide in the declaratory judgment action.  Mr. Leder explained that, in September 2011, Nationwide agreed to settle its claims against four of the defendant insurers.  According to Mr. Leder, Nationwide "extended an offer in writing to all of the insurer defendants in the Declaratory Judgment Action, including Selective Way Insurance Company, to settle Nationwide's claims . . . on the same terms – for the exact same payment per policy period – as it settled with" the four insurers that settled in September 2011.  Mr. Leder wrote: "With the sole exception of Selective Way Insurance Company, all of the defendants in the Declaratory Judgment Action either settled the claims brought by Nationwide or were dismissed by Nationwide on substantive grounds."

---

[13] Three motions to dismiss included arguments that Selective Way has no right to contribution with respect to its liability for attorneys' fees and costs incurred in prosecuting the declaratory judgment action.  All moving defendants either filed one of those motions or adopted the arguments from those motions.

15

Along with its responses in opposition to the defendants' motions, Selective Way filed an affidavit of defense not available under Md. Rule 2-501(d). In the affidavit, counsel for Selective Way asserted that his client could not set forth all facts essential to oppose the motions for summary judgment without the benefit of discovery concerning "all communications" related to the defendants' settlement agreements with Nationwide.

**E.      Order Granting Summary Judgment against Selective Way**

In May 2021, the circuit court held a hearing to consider arguments on the defendants' motions to dismiss. On June 23, 2021, the circuit court issued an order granting the "Motion[s] to Dismiss or, in the Alternative, Motion for Summary Judgment," and entering judgment in favor of each of the moving defendants.

In the opinion explaining its decision, the circuit court recounted certain facts concerning the settlement agreements from the declaratory judgment action. The court stated that Nationwide settled its claims against "every other sub-contractor's insurer except for Selective Way[.]" The court also stated that Nationwide had "executed a Settlement Agreement and Release of each of the settling insurers[,]" in which Nationwide had released the settling insurer from "'any and all claims for defense costs, indemnity, insurance coverage, apportionment, allocation or other damages, . . . and claims for attorneys' fees'" related to the construction-defect lawsuit or to Nationwide's declaratory judgment action. The court "view[ed] the issue presented" as the following one:

> Where two or more primary insurers owe a duty to defend the same
> insured, and one or more of the insurers settles with the insured or its
> subrogee (Nationwide), and is released from the obligation under its policy

16

to defend or pay the costs of defense, can a non-settling primary insurer recover contribution or restitution from the insurers which settled?

The court separately analyzed three theories of recovery asserted in the complaint: restitution based on unjust enrichment, subrogation, and contribution. The court concluded: "[W]here Nationwide released the settling insurers from any further obligation to pay the defense costs of the construction defect action and the costs to pursue the . . . declaratory judgment action, and Selective Way received a credit for the settlement amounts paid by the settling insurers, Selective Way has no claim for unjust enrichment, subrogation[,] or contribution."

Addressing the claim for restitution under a theory of unjust enrichment, the court explained that such a claim requires some benefit conferred on the defendant by the plaintiff. The court stated that Selective Way "did not confer any benefit on the defendants." The court observed that the settling insurers satisfied their own obligations through their settlements with Nationwide.

Addressing Selective Way's invocation of subrogation principles, the court explained that equitable subrogation does not arise unless one party pays the debt of another. The court observed that Selective Way "did not (and will not) 'pay the debt of another[,]'" because each of the settling insurers had already "paid their own debt[s]" when they made their settlement payments to Nationwide.

Finally, the court addressed Selective Way's claim for contribution. The court observed that, for one party to have a right of contribution from another party, the two parties must share a "common liability." The court stated: "Before Selective Way

17

asserted this claim for contribution, the defendant insurers settled the claims against them, and were released by Nationwide from claims for costs and expenses related to the defense of Questar and the costs related to the declaratory judgment action." The court continued: "The settling insurers' contractual obligations under their policies no longer existed for these claims because they were released from their contractual obligations." "Therefore," the court reasoned, "there is no common liability and no right of contribution."

The court further concluded that Selective Way had no right of contribution with respect to Nationwide's unresolved claim to recover attorneys' fees and other costs incurred in prosecuting the declaratory judgment action against Selective Way.

Along with its order, the court issued a declaration stating that Selective Way "has no right of subrogation and is not entitled to contribution or restitution" from the moving defendants. Within 30 days after the circuit court entered its order and declaratory judgment, Selective Way filed a notice of appeal.

## EXISTENCE OF FINAL JUDGMENT

No party to this appeal has argued that this Court lacks appellate jurisdiction. Nonetheless, some of Selective Way's adversaries have anticipated the possibility that this Court might have "concerns about its appellate jurisdiction." This Court is required to dismiss an appeal where "the appeal is not allowed by [the Maryland Rules] or other law[.]" Md. Rule 8-602(b)(1). This Court may dismiss an appeal "on [its] own initiative[,]" even if no party moves to dismiss the appeal. Md. Rule 8-602(a).

By statute, parties may appeal from a "final judgment" entered by the circuit court

18

in a civil case. Md. Code (1974, 2020 Repl. Vol.), § 12-301 of the Courts and Judicial Proceedings Article. Maryland Rule 2-602(a)(1) states an order that adjudicates fewer than all of the claims in the action or that adjudicates the rights and liabilities of fewer than all of the parties to the action "is not a final judgment[.]" In some limited circumstances, the circuit court (or an appellate court) may direct the entry of final judgment "as to one or more but fewer than all of the claims or parties[.]" Md. Rule 2-602(b)(1); *see* Md Rule 8-602(g)(1)(C).

In its complaint, Selective Way asserted claims against 26 named defendants and named two Nationwide defendants as necessary parties to its claim for declaratory relief. The record shows that Selective Way made a series of requests that the clerk issue a summons "for service upon each [d]efendant by private process." The record contains no affidavits of service or other evidence of service on any of the defendants. Consequently, the record does not show whether, when, or how Selective Way may have effected service on any defendants.

Sixteen of the named defendants did respond to the complaint by filing motions to dismiss for failure to state a claim upon which relief may be granted. Those parties are the two Nationwide defendants and 14 insurance companies that reached settlement agreements with Nationwide in the previous declaratory judgment action.

The following named defendants never filed a notice of entry of appearance or filed any responsive pleadings: "Fireman's Fund Insurance Company"; "National Surety Corp."; "Zurich"; "Peerless Insurance Company"; "Excelsior Insurance Company"; "Harleysville Mutual Insurance Company"; "PMA"; "Discover Property and Casualty

19

Insurance Company"; "Zurich-American"; "Maryland Casualty Company"; and "Assurance Company of America."

The final defendant named in the complaint was "State Farm Insurance." Several months after the filing of the complaint, an attorney noted an entry of appearance on behalf of "State Farm Fire and Casualty Company (incorrectly named in the Complaint as State Farm Insurance)[.]" State Farm Fire and Casualty Co. filed no answer or motion to dismiss, but its counsel attended the hearing on the motions filed by the active parties. Counsel asserted that her client had not "really been served properly" because it was "named incorrectly" in the complaint.

After the hearing, the circuit court granted the motions for dismissal or, in the alternative, for summary judgment, and entered judgment in favor of each of the moving defendants. The court's order did not address Selective Way's claims against any of the other defendants named in the complaint, such as "State Farm Insurance."

"[A] named defendant who has not been served is not a party" within the meaning of Rule 2-602. *State Highway Admin. v. Kee*, 309 Md. 523, 529 (1987). Thus, an order is considered to be a final judgment under Rule 2-602 "where unresolved claims remain solely against defendants who were not served[.]" *Swarey v. Stephenson*, 222 Md. App. 65, 81 (2015). If the order "resolve[s] all claims against the parties over whom it has acquired jurisdiction, i.e., all parties who were properly served, the judgment is final and appealable." *Higginbotham v. Pub. Serv. Comm'n of Maryland*, 171 Md. App. 254, 265 (2006); *accord Turner v. Kight*, 406 Md. 167, 172 n.3 (2008); *Worsham v. Ehrlich*, 181 Md. App. 711, 715 n.2 (2008); *Burns v. Scottish Dev. Co. Inc.*, 141 Md. App. 679, 690

(2001).

In the present case, the circuit court entered an order disposing of the claims against all parties that responded to the complaint. The record contains no affirmative evidence that the other named defendants were properly served. Accordingly, those named but apparently unserved defendants never became "parties to the action" under Rule 2-602(a).

In fact, the record contains no proof of service upon any of the defendants. Yet even where the record lacks proof that a defendant was properly served, a defendant "waive[s] service by responding to the complaint, and therefore bec[omes] a party to the action." *Higginbotham v. Pub. Serv. Comm'n of Maryland*, 171 Md. App. at 265. Thus, all defendants that filed motions to dismiss became parties to the action. Because Selective Way has appealed from an order that disposed of all claims against those defendants, the order is a final judgment within the meaning of Md. Rule 2-602.[14]

### QUESTIONS PRESENTED

In this appeal, Selective Way contends that the circuit court erred when it granted

---

[14] "State Farm Fire and Casualty Company" has filed an appellate brief asking this Court to affirm the judgment. The judgment, however, does not adjudicate the rights or liabilities of "State Farm Fire and Casualty Company," "State Farm Insurance," or any other similarly named company. Even if State Farm Fire and Casualty Co. became a party to the action merely by entering an appearance of counsel and asserting that it had not been properly served, the circuit court would have been permitted to direct the entry of final judgment as to all claims against all the defendants that filed motions to dismiss. There is no just reason to delay the entry of final judgment as to the moving parties until some time, if ever, when Selective Way's claim against "State Farm Insurance" is resolved. *See Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122, 135-36 (2000).

21

judgment in favor of the defendants on its contribution claims. Selective Way's appellate brief presents the following questions, which we reproduce verbatim:

> A. Did the Circuit Court err by dismissing the Complaint and/or granting pre-discovery summary judgment motions, ruling that Selective's rights could be affected, and indeed extinguished, by Nationwide and Appellees' self-serving (and in some instances, disingenuous) releases, incorrectly applying an equitable subrogation rationale to what was primarily an equitable contribution claim?

> B. Did the Circuit Court err by dismissing the Complaint and/or granting pre-discovery summary judgment motions, ruling that Selective's rights should be measured by contractual rights and relationships, and worse, contractual rights/relationships as they existed at the time of Selective's Contribution Action, essentially finding that a cross-claim was compulsory?

> C. Did the Circuit Court err by dismissing the Complaint and/or granting pre-discovery summary judgment motions, ruling that Selective's rights should be measured by contractual rights and relationships as they existed at the time of Selective's Contribution Action, finding that the shared obligation could be terminated by Appellees via their claim that they no longer had a contractual obligation to Nationwide or Questar based upon their releases—releases entered long after the 2008 settlement of the construction defect suit?

> D. Did the Circuit Court abuse its discretion in precluding Selective's right to discovery, and thereafter err in granting dispositive motions when there were disputed facts, including Appellees' misstatements concerning the releases and the alleged "identical" offer to Selective to settle on the same terms as all other Appellees?

As many of the defendants point out, all arguments in Selective Way's appellate brief focus on the contribution claims. Selective Way describes this entire action as an "action for contribution." Selective Way asserts that its "claim" was "rooted in principles of equitable contribution, and should <u>not</u> have been adjudicated as a claim founded only upon a theory of subrogation." (Emphasis in original.)

22

Selective Way seems to overlook its previous invocation of subrogation principles as a basis for recovery.  In its complaint, Selective Way demanded a declaration stating that the defendant insurers were "jointly and severally liable under principles including . . . legal, contractual and/or equitable subrogation[.]"  In response, some defendants argued in their motions that Selective Way possessed no right of subrogation.  The circuit court agreed, concluding that Selective Way could not pursue Nationwide's claims against the settling insurers under a subrogation theory, because Nationwide had already released those claims.

Selective Way's appellate brief includes no argument challenging the court's rejection of a claim for reimbursement under a theory of subrogation.  In fact, Selective Way actively disavows any effort to enforce Nationwide's rights against the other insurers under a subrogation theory.  Selective Way emphasizes that it "did <u>not want to step into the shoes</u> of Nationwide[,]" but rather "sought to enforce its rights to equitable contribution."  (Emphasis in original.)  Selective Way criticizes the court for even addressing the merits of a potential subrogation theory.

Similarly, Selective Way's brief does not include any argument challenging the court's rejection of its claims for restitution under a theory of unjust enrichment.  Selective Way does not argue, for instance, that it might be able to establish the elements necessary for the court to order restitution.  Selective Way argues that "the elements of an unjust enrichment restitution action . . . are inconsistent with" the equitable contribution theory that Selective Way is pursuing in this action.  According to Selective Way, however, the broader "concept of unjust enrichment" should be considered when

23

evaluating its equitable contribution claim.

Selective Way's appellate challenge is confined to the court's rejection of the contribution claims against the defendant insurers. Moreover, the authorities relied on by Selective Way concern claims for contribution. Because Selective Way has abandoned any theory of recovery under a subrogation theory or a restitution theory, there is no need for this Court to review the circuit court's analysis on those issues. *See, e.g.*, *Chesek v. Jones*, 406 Md. 446, 455 n.7 (2008); *Lovelace v. Anderson*, 366 Md. 690, 712-13 (2001). The judgment is affirmed to the extent that the court determined that Selective Way has no right to recover from the defendants under a claim of subrogation or under a claim seeking restitution as a remedy for unjust enrichment.[15]

In short, the central question presented in this appeal is whether the circuit court erred when it granted summary judgment in favor of the defendants on Selective Way's claims seeking equitable contribution.

---

[15] Even as Selective Way disavows reliance on a subrogation theory, Selective Way attempts to use subrogation principles to recover additional damages. The complaint included a request for an award of "the cost[s] and fees incurred in bringing and pursuing" the contribution action. Some defendants have pointed out that Selective Way has identified no exception that might permit recovery of the attorneys' fees incurred in a contribution action. In its reply brief, Selective Way cites *Rentals Unlimited, Inc. v. Aetna Casualty and Surety Insurance Co.*, 101 Md. App. 652 (1994), but that case involves subrogation rather than contribution. There, this Court applied the rule that, when one insurer provides a defense that another insurer was primarily obligated to provide, "'the package of rights to which a defending insurer is subrogated includes the insured's right to recover the cost of prosecuting a declaratory [judgment] action against an insurer declared to have wrongfully refused to provide a defense.'" *Id.* at 663 (quoting *Travelers Indem. Co. v. Ins. Co. of North America*, 69 Md. App. 664, 680 (1987)). Because Selective Way has no right of subrogation here, its request to make the defendants pay the attorneys' fees it has incurred in pursuing this contribution action is groundless.

24

The circuit court may grant a preliminary motion to dismiss if the complaint fails to disclose, on its face, a legally sufficient cause of action. *See, e.g.*, *Sullivan v. Caruso Builder Belle Oak, LLC*, 251 Md. App. 304, 316 (2021). "If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]" Md. Rule 2-322(c). In other words, the circuit court converts a motion to dismiss into a motion for summary judgment by considering materials outside the pleadings. *See, e.g.*, *Ray v. Mayor & City Council of Baltimore*, 430 Md. 74, 91 (2013).

The circuit court's written opinion here expressly referred to materials outside the complaint, including the affidavit from Mr. Leder and the settlement agreements of the claims from the declaratory judgment action. The court made its ruling based on those materials. The court made no mention of the applicable standard for dismissing a complaint but instead recited the standard for evaluating motions for summary judgment under Rule 2-501. By all indications, therefore, the court treated the defendants' motions as motions for summary judgment.

When evaluating a motion for summary judgment, the court must "'construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party.'" *Appiah v. Hall*, 416 Md. 533, 546 (2010) (quoting *O'Connor v. Baltimore County*, 382 Md. 102, 111 (2004)). The court "shall enter judgment in favor of or against the moving party if the motion and

25

response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f). "Because '[t]he question of whether a trial court's grant of summary judgment was proper is a question of law,'" this Court reviews the decision "without deference" to the ruling of the trial court. *CX Reinsurance Co. Ltd. v. Johnson*, 481 Md. 472, 484 (2022) (quoting *Rossello v. Zurich Am. Ins. Co.*, 468 Md. 92, 102 (2020)).

"There is a well-established 'general rule that in appeals from the granting of a motion for summary judgment, absent exceptional circumstances, Maryland appellate courts will only consider the grounds upon which the [circuit] court granted summary judgment[.]'" *Irwin Industrial Tool Co. v. Pifer*, 478 Md. 645, 682 (2022) (quoting *State v. Rovin*, 472 Md. 317, 373 (2021)). Appellate review of the circuit court's grant of summary judgment "'is limited ordinarily to the legal grounds relied upon explicitly in its disposition.'" *Irwin Industrial Tool Co. v. Pifer*, 478 Md. at 682 (quoting *Baker v. Montgomery County*, 427 Md. 691, 706 (2012)). In our review, "we are generally confined to the bases relied on by the [circuit] court, and [we] will not affirm the grant of summary judgment for a reason not relied on by the circuit court." *Deboy v. City of Crisfield*, 167 Md. App. 548, 554 (2006) (citing *Warner v. German*, 100 Md. App. 512, 517 (1994)).

This discussion will begin by analyzing the ground on which the circuit court granted summary judgment with respect to the entirety of Selective Way's contribution claims. In its written opinion, the court concluded that Selective Way had no right of contribution from the defendants because those defendants had already been released

26

from their contractual obligations before Selective Way asserted the claims for contribution. Because we conclude that this decision rests on an error of law, we reverse the judgment in favor of the defendants on the contribution claims.

Next, this discussion will address the court's separate conclusion regarding one part of Selective Way's contribution claims. Specifically, the court determined that Selective Way is not entitled to contribution towards its liability for attorneys' fees and other costs incurred by Nationwide in prosecuting the declaratory judgment action against Selective Way. Because Selective Way fails to demonstrate any error in that determination, we uphold that part of the circuit court's ruling.

Finally, we shall discuss one issue that was not addressed by the circuit court. Some (but not all) defendants have argued that this action should be stayed or dismissed, on the theory that Selective Way's contribution claim is not yet ripe until Selective Way actually pays amounts owed to Nationwide. We conclude that, under the circumstances, the court is not required to dismiss the action. The court may exercise its discretion in deciding whether to stay the action or to allow it to proceed in some fashion.

### I. Ground on Which the Circuit Court Granted Summary Judgment

The circuit court granted judgment in favor of the defendants based on its conclusion that Selective Way could not establish one of the necessary elements of its contribution claims.

"Contribution between joint obligors is part of the common law of this State." *Shepter v. Johns Hopkins Univ.*, 334 Md. 82, 94 (1994). "In essence, contribution is the distribution of loss among culpable parties in accordance with their proportionate shares."

27

*Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217, 280 (1996), *aff'd*, 346 Md. 122 (1997). The doctrine of contribution "is not based on contract or tort, but instead is a doctrine based on principles of equity." *Id.* Generally, these principles "require that persons under a common burden shall bear responsibility in equal proportions." *Lyon v. Campbell*, 324 Md. 178, 182 (1991). "[N]o one ought to profit by another person's loss where [the person] has incurred a like responsibility." *Id.*

"In order for a party to have a right of contribution, two prerequisites must be satisfied." *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. at 280. "First, the parties must share a 'common liability' or burden." *Id.* at 280-81. "Second, the party seeking contribution must have paid, under legal compulsion, more than [the party's] fair share of the common obligation." *Id.* at 281.

Parties share a common liability if they are co-obligors, i.e., if they are jointly liable or jointly and severally liable on an obligation. *Id.*. For example, a contribution claim may arise among parties who are co-guarantors of the same debt. *Lyon v. Campbell*, 324 Md. at 182. If two guarantors pay the debt after it goes into default, but a third guarantor refuses, those two guarantors have a right of contribution under which they are entitled to reimbursement for the third guarantor's pro rata share of the debt. *Id.* at 183 (discussing *Hooper v. Hooper*, 81 Md. 155, 174 (1895)). The common liability "can arise out of two separate contracts or instruments, as long as the liability is for the 'same identical debt.'" *Utica Mut. Ins. Co., Inc. v. Way of the Cross Church of Christ, Inc.*, 219 F. Supp. 2d 663, 668 (D. Md. 2002) (quoting *Craig v. Ankeney*, 4 Gill 255 (1846)).

28

In the majority of states, courts have recognized claims for contribution where two or more insurers cover the same insured for the same risk. Under this prevailing approach, an insurer that pays more than its fair share of a loss may have a right of contribution from another insurer that was obligated to cover the same loss. *See generally* 15A Steven Plitt et al., *Couch on Insurance* § 218:1 (3d ed. 2003); Scott M. Seaman & Jason R. Schulze, *Allocation of Losses in Complex Insurance Coverage Claims* § 5:2 (3d ed. 2014). No authority cited by the circuit court or the defendants indicates that Maryland's doctrine of equitable contribution is inconsistent with the principles underlying this prevailing approach. As one court has summarized:

> Under the doctrine of equitable contribution, where multiple insurers provide coverage for a loss of an insured, an insurer who pays more than its share of the costs of defense and indemnity may require a proportionate contribution from the other coinsurers. The right of equitable contribution does not depend on an express agreement between the parties to indemnify each other, but, rather, rests upon equitable principles that imply an obligation to contribute ratably toward the payment of a common obligation. Because it does not derive from contract, equitable contribution, unlike subrogation, is a right of the insurer and exists independently of the rights of the insured.

> Equitable contribution is designed to prevent the potential unfair result that the company that pays first is left to cover the entire loss. Where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant. The underlying principle is that each insurer pays its fair share and one does not profit at the expense of the others. The doctrine recognizes that an insured who expects to be paid in full by one insurance company may have no incentive to ask the other insurance company covering the same risk to pay its share. And the doctrine aims to deprive an insurer of any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor. Apart from ensuring fairness, equitable contribution furthers the basic risk-spreading purpose of insurance by allowing insurers to

29

distribute the costs of a claim equally among all insurers with coverage obligations.

*Ins. Co. of State of Pennsylvania v. Great Northern Ins. Co.*, 45 N.E.3d 1283, 1286 (Mass. 2016) (citations and quotation marks omitted).[16]

In support of its equitable contribution claim here, Selective Way has cited a statement from a footnote to this Court's opinion in Selective Way's appeal of the judgment in Nationwide's declaratory judgment action. There, this Court stated that, "where two liability insurers both provide primary coverage, they jointly share the obligation to pay for the defense of the insured." *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. 688, 733 n.12 (2019) (citing *Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. 52, 65-66 (1993)). Selective Way contends that the circuit court's ruling in this action is "in direct contravention" of a "holding," expressed in that footnote, to the effect that each defendant insurer shared a joint obligation with Selective Way.

The case cited in that footnote concerned two automobile liability insurance policies, issued by different insurers, covering the same vehicle. *Nolt v. U.S. Fidelity and Guaranty Co.*, 329 Md. at 55. One insurer provided a defense for the vehicle owner in a negligence action, but the other insurer refused. *Id.* The vehicle owner filed suit to

---

[16] Harford Mutual Insurance Co. and Firstline National Insurance Co. argue that California courts have held that "co-insurers are not co-obligors" for the purpose of an equitable contribution claim. This argument is mistaken. The California Court of Appeal has held that two primary liability insurers "are not co-obligors on 'a' contract debt (singular)" within the meaning of certain provisions of California's good faith settlement statute. *Herrick Corp. v. Canadian Ins. Co.*, 29 Cal. App. 4th 753, 761 (Ct. App. 1994). Under California law, however, it is well established that an insurer may have a right to contribution from another insurer, even though their coverage obligations arise from separate contracts. *Id.* at 759.

establish that the non-defending insurer had a duty to defend. *Id.* The trial court determined that the non-defending insurer was jointly liable with the defending insurer for defense costs from the underlying negligence action. *Id.* at 56. The Court upheld the determination that both insurers "provided primary coverage" and that, under the language "of the 'other insurance' clauses in their policies," they shared liability "on a *pro rata* basis." *Id.* at 65. "Consequently," the Court concluded that the two insurers "were jointly liable for the counsel fees and expenses incurred in the defense of [the insured] in the underlying suit." *Id.* at 66.

Throughout the present case, Selective Way has overstated the significance of this Court's footnote describing *Nolt v. U.S. Fidelity and Guaranty Co.*, 329 Md. at 65-66. Contrary to Selective Way's arguments, the footnote recites a general statement of law, which does not amount to any "holding" or "decision" or "ruling" in this contribution action between Selective Way and other defendant insurers. The circuit court correctly understood that the footnote means no more than it says.[17]

In its written opinion here, the circuit court entertained the premise that Selective

---

[17] Some of Selective Way's adversaries also attempt to argue that this Court's opinion from the other action decided more than it actually did. Previously, this Court rejected Selective Way's assertions that the judgment for damages against Selective Way alone represented what Selective Way called a "'joint and several award' of attorney's fees." *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. at 740. This Court explained that Selective Way was "the only defendant found to be liable to Nationwide[,]" and that the trial court "never decided whether multiple defendants were jointly and severally liable." *Id.* at 741. The Court added: "The only liability here is singular." *Id.* That discussion strictly concerns the limited scope of the "liability" that was determined by the trial court in the previous action. There is no merit to the defendants' suggestions that these statements somehow prejudged the validity of a contribution claim that had not been asserted.

Way and the other defendant insurers, at some point in time, may have shared a common obligation to pay for the costs of defending Questar in the construction-defect lawsuit. The court went on to conclude that Selective Way had no right of contribution because, in the court's view, the alleged "common liability" between Selective Way and the defendants "no longer" existed when Selective Way filed its complaint for contribution. The court wrote:

> The right of contribution alleged by Selective Way arises out of the insurers' duty to defend Questar under their separate policies, or contracts. In this case, the settling insurers have satisfied their obligation to Nationwide and they have been released from the claims for defending the construction defect case and pursuing the declaratory judgment action. They no longer have a contractual obligation to Nationwide or Questar for the claims in question. Selective Way did not assert a cross-claim against the other insurers. Before Selective Way asserted this claim for contribution, the defendant insurers settled the claims against them, and were released by Nationwide from claims for costs and expenses related to the defense of Questar and the costs related to the declaratory judgment action. When Selective Way filed this suit, the defendants/settling insurers no longer had any duty to defend Questar or to pay the costs of either the defense of the construction defect action or pursuing the declaratory judgment action. The settling insurers' contractual obligations under their policies no longer existed for these claims because they were released from their contractual obligations. Therefore, there is no common liability and no right of contribution.

The court's analysis highlights two facts in combination: (1) Nationwide released the settling insurers from all claims by Nationwide related to the construction-defect lawsuit and the declaratory judgment action; and (2) those releases took effect before Selective Way filed its complaint seeking contribution from those insurers. This analysis suggests that, to the extent that Selective Way may have had any right of contribution from the defendant insurers, Selective Way needed to assert claims for contribution

32

preemptively before the other insurers settled the claims brought by Nationwide.

It is true that, under the Maryland Rules, Selective Way was permitted to assert cross-claims in the declaratory judgment action against the other insurers that allegedly breached a duty to defend Questar. *See* Md. Rule 2-331(b) (authorizing a party to "assert . . . a cross-claim . . . against a co-party" who "may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant"). If Selective Way had done so, the circuit court could have adjudicated Selective Way's claims for contribution within Nationwide's declaratory judgment action against Selective Way and other insurers.

Maryland law, however, does not make cross-claims mandatory. *See, e.g.*, *Garlock, Inc. v. Gallagher*, 149 Md. App. 189, 207 (2003). "No rule or statute imposes the . . . requirement" that a defendant who has a right of contribution must "'assert' that right in the original [action] by filing a cross-claim[.]" *Lerman v. Heeman*, 347 Md. 439, 446 (1997). The rules that authorize defendants to assert cross-claims include no requirement that a claim for contribution "'must be brought in the original action and cannot be brought in an independent action.'" *Mercy Med. Ctr. v. Julian*, 429 Md. 348, 378 (2012) (quoting *O'Keefe v. Baltimore Transit Co.*, 201 Md. 345, 351 (1953)). Thus, although a defendant may bring a claim for contribution against other defendants in the underlying action, "a cross claim is not required . . . , and a separate action can be maintained for contribution[.]" *Max's of Camden Yards v. A.C. Beverage*, 172 Md. App. 139, 151 n.3 (2006). We disagree with the circuit court to the extent that it suggested that Selective Way lost whatever contribution rights it might have had by failing to assert a

cross-claim in Nationwide's declaratory judgment action.

According to the circuit court, the decisive fact was that, by the time that Selective Way filed its complaint seeking contribution, the settling defendants no longer had any "contractual obligation" to Questar or to Nationwide (which claimed to be subrogated to Questar's contractual rights). The court stated that the settling defendants were "released by Nationwide" from claims related to the construction-defect lawsuit and the declaratory judgment action. On that basis, the court concluded that the settling insurers no longer shared any "common liability" with Selective Way. This reasoning seems to condition each insurer's equitable obligations to other insurers on the continuing existence of the insurer's contractual obligation toward the insured.

Other courts have concluded that a settlement agreement that absolves an insurer of its contractual obligations to the insured does not extinguish the rights of other insurers to receive equitable contribution from the settling insurer. *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 210 (2d Cir. 2000) (stating that "[t]he notion that any settlement by which an insurer obtains a release from its insured, regardless of its terms, insulates that insurer from all contribution claims, is untenable"); *Century Indem. Co. v. Liberty Mut. Ins. Co.*, 815 F. Supp. 2d 508, 512 (D.R.I. 2011) (observing that "courts and commentators . . . have roundly rejected [a] . . . bright line rule that one insurer's settlement with the insured is always a bar to a separate action against that insurer by the other insurer or insurers for equitable contribution") (citation and quotation marks omitted); *Nucor Corp. v. Empl'rs Ins. Co. of Wausau*, 296 P.3d 74, 85 (Ct. App. Ariz. 2012) (holding that a settlement agreement with two insurers "did not serve to extinguish

34

[another insurer's] contribution rights" against the settling insurers); *Empl'rs Ins. Co. of Wausau v. Travelers Indem. Co.*, 141 Cal. App. 4th 398, 404 (Ct. App. 2006) (holding that "one insurer's settlement and release with its insured" did not extinguish "its obligation to contribute to the costs of the insured's defense incurred by another insurer"); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1289 (Ct. App. 1998) (holding that "one insurer's settlement with the insured is not a bar to a separate action against that insurer by the other insurer or insurers for equitable contribution"); *Potomac Ins. Co. of Illinois ex rel. OneBeacon Ins. Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 41 A.3d 586, 597-98 (Super. Ct. N.J. App. Div. 2012) (holding that "[one insurer's] settlement with [the insured] was not, in and of itself, a bar to [another insurer's] subsequent suit against it for contribution to defense costs"), *aff'd*, 73 A.3d 465 (N.J. 2013); *Certain Underwriters at Lloyd's London & Excess Ins. Co., Ltd. v. Massachusetts Bonding & Ins. Co.*, 230 P.3d 103, 114 (Ct. App. Or. 2010) (concluding that trial court "erred in granting summary judgment on the ground that [plaintiff insurers'] contribution claims were extinguished by [defendant insurers'] settlements with [the insured]").

In reaching these conclusions, courts have explained that equitable contribution rights among different insurers are distinct from the contractual rights of the insured. "Contribution rights, if any, between two or more insurance companies insuring the same event are not based on the law of contracts." *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d at 210. "Instead, whatever obligations or rights to contribution may exist between two or more insurers of the same event flow from equitable principles." *Id.* at

35

211; *accord Nucor Corp. v. Empl'rs Ins. Co. of Wausau*, 296 P.3d at 85; *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th at 1294; *Potomac Ins. Co. of Illinois ex rel. OneBeacon Ins. Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 41 A.3d at 596; *Certain Underwriters at Lloyd's London & Excess Ins. Co., Ltd. v. Massachusetts Bonding & Ins. Co.*, 230 P.3d at 111.

An insurer's "right of equitable contribution belongs to each insurer individually" and "exists *independently* of the rights of the insured." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th at 1294-95 (emphasis in original); *accord Nucor Corp. v. Empl'rs Ins. Co. of Wausau*, 296 P.3d at 85 (stating that insurers' "respective obligations for contribution to other *insurers* for the costs of defense are entirely separate from their obligations to their insured and are adjusted equitably on the basis of all the circumstances of the case") (quotation marks omitted); *Empl'rs Ins. Co. of Wausau v. Travelers Indem. Co.*, 141 Cal. App. 4th at 404 (stating that "an insurer's obligation to contribute to another insurer's defense or indemnification of a common insured arises independently and is separate from any contractual obligation owed to their insured"); *Potomac Ins. Co. of Illinois ex rel. OneBeacon Ins. Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 41 A.3d at 596; *Certain Underwriters at Lloyd's London & Excess Ins. Co., Ltd. v. Massachusetts Bonding & Ins. Co.*, 230 P.3d at 112. In this regard, the right of contribution is "entirely different" from a "purely derivative" right of subrogation, under which a subrogated insurer "has no greater rights than the insured and is subject to the same defenses assertable against the insured." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th at 1292-93.

An insurer's "right [to equitable contribution] is not the insured's [right] to disclaim." *Certain Underwriters at Lloyd's London & Excess Ins. Co., Ltd. v. Massachusetts Bonding & Ins. Co.*, 230 P.3d at 113 (quotation marks omitted); *accord Nucor Corp. v. Empl'rs Ins. Co. of Wausau*, 296 P.3d at 84 n.17. Moreover, "the contract of settlement an insurer enters into with the insured cannot affect the rights of another insurer who is not a party to it." *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d at 211. Although an insured is "able to release its own claims against [insurers] for defense costs," the insured is "not in a position to release [an insurer's] claims" against other insurers for equitable contribution. *Certain Underwriters at Lloyd's London & Excess Ins. Co., Ltd. v. Massachusetts Bonding & Ins. Co.*, 230 P.3d at 112; *accord Potomac Ins. Co. of Illinois ex rel. OneBeacon Ins. Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 41 A.3d at 598 (explaining that "[the insured's] release of its rights . . . did not, by itself, extinguish [a non-settling insurer's] right to seek contribution").[18]

Maryland, like many other states, has a "'strong public policy to encourage settlement'" of lawsuits. *CX Reinsurance Co. Ltd. v. Johnson*, 481 Md. 472, 505 (2022) (quoting *Matter of Collins*, 468 Md. 672, 697 (2020)). In other cases, some insurers have argued that this policy favoring settlements would be frustrated if an insurer remains

---

[18] The circuit court deemed it significant that each settlement agreement states that "Nationwide releases" a settling insurer from "any and all claims for defense costs, indemnity, insurance coverage, apportionment, allocation or other damages" related to the declaratory judgment action and the construction-defect lawsuit. One settlement agreement states that "Nationwide releases" the Penn National defendants also from claims for "contribution." Yet even under the broad terms of these releases, the releasing party is Nationwide. *See Potomac Ins. Co. of Illinois ex rel. OneBeacon Ins. Co. v. Pennsylvania Mf'rs Ass'n Ins. Co.*, 73 A.3d 465, 429-30 (N.J. 2013).

subject to contribution claims after reaching a settlement that discharges its contractual obligations. Courts have rejected those arguments, reasoning that these policy concerns do not mandate a categorical rule barring contribution claims against a settling insurer. *Century Indem. Co. v. Liberty Mut. Ins. Co.*, 815 F. Supp. 2d at 513; *Empl'rs Ins. Co. of Wausau v. Travelers Indem. Co.*, 141 Cal. App. 4th at 406; *Certain Underwriters at Lloyd's London & Excess Ins. Co., Ltd. v. Massachusetts Bonding & Ins. Co.*, 230 P.3d at 114. The "societal interest in encouraging settlements" must be "balanced against . . . the equitable concerns underlying the well-established rule of contribution between insurers." *Empl'rs Ins. Co. of Wausau v. Travelers Indem. Co.*, 141 Cal. App. 4th at 406; *Certain Underwriters at Lloyd's London & Excess Ins. Co., Ltd. v. Massachusetts Bonding & Ins. Co.*, 230 P.3d at 113.[19]

Some courts have observed that, if an insurer's settlement with the insured extinguishes contribution claims against the settling insurer, one insurer might "'settle for a limited amount' with the insured to avoid a contribution claim from an insurer who was not a party to such agreement and who paid significant and disproportionate defense costs." *Nucor Corp. v. Empl'rs Ins. Co. of Wausau*, 296 P.3d at 85 (quoting *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 139 (Utah 1997)); *see also Century Indem. Co. v. Liberty Mut. Ins. Co.*, 815 F. Supp. 2d at 513 (reasoning that a rule barring contribution actions after an insurer's settlement "could create an 'incentive for an insurer

---

[19] Where insurers "anticipate[] the possibility" that they can "be held liable for contribution[,]" they can insist that the settlement agreements include "provisions that require [the insured] to indemnify them for [contribution] claims." *Empl'rs Ins. Co. of Wausau v. Travelers Indem. Co.*, 141 Cal. App. 4th at 406.

to engage in "sharp practices" to settle for a limited amount with the possibly unsophisticated insured' to avoid paying contribution to a coinsurer") (quoting *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d at 139).

Unlike the other courts that have addressed this question, the circuit court here concluded that the insurers' settlement agreements extinguished their potential contribution liability. In reaching that conclusion, the court noted the absence of any "Maryland case on point" and "a lack of cases elsewhere on the issue of equitable contribution under the circumstances of this case." The court cited two opinions from outside Maryland for guidance. As with the other opinions cited above, these opinions are not controlling, but at most might be persuasive authority. *See, e.g.*, *Bozman v. Bozman*, 376 Md. 461, 490 (2003); *Six Flags America, L.P. v. Gonzalez-Perdomo*, 248 Md. App. 569, 585 (2020), *cert. denied*, 474 Md. 206 (2021). In our assessment, the two opinions cited by the court lack persuasive force here.

First, the circuit court cited *Nucor Corp. v. Employers Insurance Co. of Wausau*, 975 F. Supp. 2d 1048 (D. Ariz. 2013). In that case, a federal district court determined that a 2005 settlement agreement between a manufacturing company and two liability insurers "discharge[d] those insurers from any and all further liability or defense obligation" for claims against the manufacturing company relating to a particular facility. *Id.* at 1058. The court concluded that the two settling insurers had no obligation to defend the insured in a later action, "which did not arise until 2009, and was not filed until 2010." *Id.* at 1059. The court ruled that, because the insured manufacturer had "no right to a defense" from those insurers for that later action, a third liability insurer, "in

turn, ha[d] no right to equitable contribution" from the two settling insurers for defense costs in the later action. *Id.*

The federal district court's application of Arizona law diverges with an opinion issued several months earlier by that State's intermediate appellate court, concerning the effect of the same settlement agreement on the same parties. In *Nucor Corp. v. Employers Insurance Co. of Wausau*, 296 P.3d at 85, the Court of Appeals of Arizona determined that the insurers' 2005 settlement agreements did not extinguish the third insurer's contribution rights against the two settling insurers. That conclusion is in harmony with the conclusions reached by nearly every other court called upon to decide a similar issue. Whatever value the federal district court's opinion might have, its decision is limited to the effect of an insurer's settlement on the allocation of defense costs for a lawsuit that did not arise until long after the settlement agreement. *See Nucor Corp. v. Empl'rs Ins. Co. of Wausau*, 975 F. Supp. 2d at 1059. The opinion lacks persuasive value in determining the effect of a settlement on contribution claims for defense costs predating those settlements.

The other case cited by the circuit court was *OneBeacon America Insurance Co. v. American Motorists Insurance Co.*, 679 F.3d 456 (6th Cir. 2012), which had been cited in one of the motions to dismiss. Under the facts of that case, an insured party brought suit against several insurers, contending that the insurers were contractually obligated to indemnify the insured for claims arising from environmental contamination. *Id.* at 457. The insured reached a settlement with a primary insurer and later obtained a judgment against an excess insurer, which had not settled. *Id.* The excess insurer then brought a

separate action seeking contribution from the primary insurer. *Id.* at 458. Applying Ohio law, the Sixth Circuit concluded "that settlement can exhaust a settling insurer's policy, and that such exhaustion precludes a non-settling insurer from seeking equitable contribution from the settling insurers." *Id.* at 463.

The Sixth Circuit relied on cases concerning the "exhaustion" of primary insurance coverage. *OneBeacon America Ins. Co. v. American Motorists Ins. Co.*, 679 F.3d at 461-62. The Sixth Circuit agreed that "a settlement with a primary insurer 'exhausts' the coverage and triggers the excess policy." *Id.* at 462 (citing *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1454 (3d Cir. 1996)). This concept of "exhaustion" describes an interaction between primary insurance and excess insurance. Generally, "a true excess or secondary policy is not 'triggered' or required to pay until the underlying primary coverage has been exhausted." *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d at 1454. It would be inapt to extend the concept of exhaustion to the obligations of multiple primary insurers, whose obligations are not triggered by the exhaustion of other insurance coverage.

Given the overwhelming weight of the relevant authorities, we conclude that the circuit court erred when it determined that the defendants' settlement agreements with Nationwide extinguished whatever contribution rights Selective Way may have had against those insurers.

In this appeal, no defendant defends the premise that a settlement agreement with an insurer, by itself, bars subsequent equitable contribution claims brought by other insurers. Instead, the defendants attempt, in various ways, to recharacterize the court's

41

ruling or to suggest other reasons for ruling in their favor.

One appellate brief (filed by Harford Mutual Insurance Co. and Firstline National Insurance Co.) insists that the circuit court "did not rely upon the releases to extinguish Selective Way's alleged right of contribution[.]" According to their brief, the court's ruling "was predicated in part on the fact that each of the other [d]efendants had paid their pro rata share of the obligation or been dismissed on substantive grounds[.]"[20]

Another appellate brief (filed by American Fire and Casualty Co., Montgomery Mutual Insurance Co., Ohio Casualty Insurance Co., and West American Insurance Co.) describes the court's ruling as "*sui generis* and not one of general application." According to these defendants, the court determined that Selective Way could not pursue contribution under the many "unusual" "facts and circumstances of this case[,]" including Selective Way's tactical decision not to settle with Nationwide in the declaratory judgment action.

Yet another appellate brief (filed by Twin City Fire Insurance Co., joined by Cincinnati Insurance Co., Mutual Benefit Insurance Co., and three Penn National defendants) asserts that this case "involves" an "unusual situation with particular equities." According to these defendants, the existence of prior settlement agreements was just one fact bearing upon the court's consideration of the equities. These defendants emphasize that Selective Way rejected Nationwide's offer to settle the claims against

---

[20] Selective Way vigorously contests the implication that Harford Mutual Insurance Co. "paid [its] pro rata share of the obligation." As previously mentioned, Selective Way claims, without support in the record, that Harford Mutual Insurance Co. paid less than $3,000.00, a fraction of one percent of the defense costs.

Selective Way in 2011 for less than $270,000.00, "gambl[ing]," in their view, that it could do better at trial. In their assessment, various "equities" here undermine Selective Way's claim for equitable contribution.

Contrary to the assertions of some defendants, the court's grant of summary judgment rested wholly on the factual premise that the defendants had reached settlement agreements with Nationwide before Selective Way asserted its contribution claims. The court reasoned that "[t]he settling insurers' contractual obligations no longer existed." "Therefore," the court concluded, "there [was] no common liability and no right of contribution."[21] The court did not rely on any additional factual circumstances, such as the settlement amounts (many of which were unknown to the court) or the terms of the 2011 settlement offer by Nationwide. Under any fair reading of the opinion, the court did not make its ruling based on additional, unstated "circumstances" of the case. *See Irwin Industrial Tool Co. v. Pifer*, 478 Md. 645, 683 (2022) (concluding that "it would not be reasonable . . . to infer" that the circuit court granted summary judgment on alternative grounds "without having mentioned doing so").

Because the ground on which the circuit court relied is erroneous, we need not address any alternative grounds suggested by some defendants. When this Court "comes to a different conclusion on the pertinent question of law and reverses a grant of summary judgment by a trial court," this Court "will not ordinarily seek to sustain the grant of

_____

[21] The circuit court's analysis of the contribution claim closely echoes the arguments made in the motions by Harford Mutual Insurance Co. (and Firstline National Insurance Co.), the three Penn National defendants, and Mutual Benefit Insurance Co.

summary judgment on a different ground." *Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584, 598 (2013). "We do not review the issues that did not form the basis for the [circuit] court's ruling, unless the court would have had no discretion but to grant summary judgment on one of those bases." *Middlebrook Tech, LLC v. Moore*, 157 Md. App. 40, 58 (2004). Whatever merits there might be to the defendants' alternative arguments, those arguments do not relate to any "pure issue of law" (*Davis v. Goodman*, 117 Md. App. 378, 395 n.3 (1997)) on which the court would have had no discretion to deny summary judgment. At the very least, the circuit court would have been left with a discretionary choice of whether to assess the merits of those arguments on the existing record or after the development of a more complete factual record. *See Hous. Auth. of Baltimore City v. Woodland*, 438 Md. 415, 426-27 (2014).

In sum, we cannot uphold the grant of summary judgment on the ground relied upon by the circuit court. When this case returns to the circuit court, the defendants are free to advance any other grounds for judgment in their favor. The court, in its discretion, may decide whether discovery may be necessary before evaluating any other grounds offered by the defendants.

## II.  Decision on the Limits of the Contribution Claims

One group of defendants (Ohio Casualty Insurance Co., Montgomery Mutual Insurance Co., American Fire and Casualty Co., and West American Insurance Co.) observes that the circuit court employed a separate rationale when it rejected one part of the monetary relief sought by Selective Way under its contribution claims.

In their brief, these defendants explain that Selective Way is seeking contribution

with respect to multiple, distinct sums. First, Selective Way seeks contribution with respect to its liability for the defense costs incurred by Nationwide in defending the construction-defect lawsuit against Questar. Second, Selective Way seeks contribution towards its expected liability (in an amount that has yet to be determined) for certain attorneys' fees and other costs incurred by Nationwide in prosecuting the declaratory judgment action against Selective Way. These defendants argue that, if this Court does not affirm the circuit court's decision "in its entirety," this Court should affirm the court's determination that Selective Way is not entitled to contribution with respect to the fees and costs incurred by Nationwide in prosecuting the declaratory judgment action against Selective Way.

To address this argument, some additional background is required. Under the typical liability insurance policy, the insurer is obligated to indemnify the insured for covered claims and to defend the insured against claims potentially covered by the policy. *See*, *e.g.*, *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 257 (1999). If the insurer breaches its contractual duty to defend, the recoverable damages are "the insured's expenses, including attorney fees, in defending the underlying tort action, as well as the insured's expenses and attorney fees in a separate contract or declaratory judgment action . . . to establish that there exists a duty to defend." *Id.* at 264. In other words, if an insurer breaches the duty to defend, the insured's damages consist of: (1) the fees and expenses that the insured incurred in defending itself; and (2) in an exception to the "American Rule" that a prevailing party cannot recover its own attorneys' fees, the fees and expenses that the insured incurred in proving that the insurer breached its duty to

45

defend. *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 355 Md. 566, 591 (1999).

When a liability insurer breaches its duty to defend and another insurer "'steps in to provide a defense[,]'" the "'package of rights to which [the] defending insurer is subrogated includes the insured's right to recover the cost of prosecuting a declaratory [judgment] action against an insurer declared to have wrongfully refused to provide a defense.'" *Rentals Unlimited, Inc. v. Aetna Cas. & Sur. Ins. Co.*, 101 Md. App. 652, 663 (1994) (quoting *Travelers Indem. Co. v. Ins. Co. of North America*, 69 Md. App. 664, 679-80 (1987)). In those circumstances, the defending insurer can recover "[r]easonable expenses, including costs and attorney's fees incurred in defending the underlying suit and in prosecuting the declaratory judgment action" against the breaching insurer. *Rentals Unlimited, Inc. v. Aetna Cas. & Sur. Ins. Co.*, 101 Md. App. at 663 (citing *Travelers Indem. Co. v. Ins. Co. of North America*, 69 Md. App. at 681).

In the declaratory judgment action that Nationwide brought against Selective Way and other insurers, Nationwide relied on these subrogation principles to seek reimbursement from Selective Way and other alleged insurers of Questar. *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. 688, 703 (2019), *aff'd*, 473 Md. 178 (2021). After settling its claims against defendants other than Selective Way, Nationwide succeeded in proving at a jury trial that Selective Way is liable for $994,719.54 of defense costs that Nationwide incurred in defending the construction-defect lawsuit. *Id.* at 706. The court, without a jury trial or evidentiary hearing, awarded $810,556.72 to Nationwide for the attorneys' fees and expenses that it incurred in the declaratory judgment action. *Id.* at 707. After Selective Way appealed, this Court

vacated the award of fees and expenses that Nationwide incurred in prosecuting the declaratory judgment action and remanded the case "for a jury trial solely to determine the amount of reasonable and necessary attorneys' fees and expenses incurred by Nationwide in the declaratory judgment action as a result of Selective Way's breach of its duty to defend." *Id.* at 709.

Originally, the trial court had ordered Selective Way to pay all attorneys' fees and expenses incurred by Nationwide since the beginning of the declaratory judgment action, even though the action had included claims against many defendants other than Selective Way. This Court's opinion explained that, after the remand, a jury could find Selective Way "liable for the fees and expenses incurred '*as a result* of [its] breach of its contractual obligation to defend the insured.'" *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. at 756 (emphasis in original) (quoting *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 232 (1997)) (further quotation marks omitted). This Court explained that Selective Way could be found "liable for 'all services and expenses reasonably related to' the claim against Selective Way[,]" i.e., services and expenses that "'would have been rendered and incurred by reasonably competent counsel engaged to' pursue an action 'arising out of the same factual background' as did the [declaratory judgment] action 'but which alleged only' the claim against Selective Way." *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. at 757-58 (quoting *Continental Cas. Co. v. Board of Educ. of Charles County*, 302 Md. 516, 532 (1985)). As a practical matter, therefore, Selective Way may not necessarily be found liable for all attorneys' fees and costs paid by Nationwide in prosecuting the declaratory

47

judgment action. That amount of liability will be based on findings unique to Selective Way.

Selective Way later initiated this contribution action against the other insurers previously sued by Nationwide. In their motions to dismiss, the defendants argued that Selective Way was not entitled to contribution toward its liability for attorneys' fees and other costs incurred by Nationwide in prosecuting the declaratory judgment action. The defendants argued that they were not co-obligors with Selective Way for those fees and costs. The defendants emphasized that Selective Way's liability is limited to fees and costs resulting from its own breach of contract. The defendants argued, in short, that they never undertook any shared obligation or joint obligation with Selective Way for the fees and costs that Nationwide incurred in pursuing the declaratory judgment action.[22]

Opposing the defendants' motions, Selective Way said little about its claim to make the defendants liable for the attorneys' fees and costs incurred by Nationwide in prosecuting the declaratory judgment action. In one of its responses, Selective Way wrote that "this issue" was "not yet at hand" and "may be rendered moot[.]" Selective Way said that there was "a possibility that a contribution issue" with respect to those fees and costs "could arise if Nationwide tries to claim that some costs are common costs." Selective Way offered little elaboration on these statements.

---

[22] The defendants point out that "[p]arties are co-obligors if they are jointly liable or jointly and severally liable on an obligation[,]" but "[t]hey are not co-obligors . . . if they are only severally liable on the obligation." *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217, 281 (1996), *aff'd*, 346 Md. 122 (1997).

In its written opinion, the circuit court agreed with the defendants that Selective Way had no right of contribution with respect to its liability for those attorneys' fees and costs. In the section addressing the contribution claim, the court wrote:

> Furthermore, on remand of the claim for the costs of pursuing the declaratory judgment action, Selective Way is liable for costs incurred by Nationwide because of Selective Way's breach of contract. Selective Way has no entitlement to contribution for costs incurred by Nationwide because of Selective Way's breach of its own contractual obligations.

On appeal, Selective Way acknowledges the circuit court's determination that it is not entitled to contribution with respect to its liability for attorneys' fees and costs incurred in prosecuting the declaratory judgment action. Despite this acknowledgement, Selective Way's brief largely overlooks this aspect of the court's ruling. Selective Way asserts that some of those fees and costs resulted from services that "were not solely directed to" Nationwide's claims against Selective Way. Selective Way argues that some "portions" of fees and costs from the declaratory judgment action "were shared by all" defendants and cannot be "shifted" to Selective Way alone through "[settlement] agreements with Nationwide, to which Selective Way was not a party[.]"

Selective Way's argument fails to address the rationale on which the circuit court relied. The court did not determine that the settlement agreements terminated a right of contribution with respect to the fees and costs that Nationwide incurred in prosecuting the declaratory judgment action. As we understand the court's opinion, this part of the analysis did not even concern the settlement agreements. Rather, the court adopted the position, advanced by all defendants, that the defendants never shared any joint obligation with Selective Way to pay those particular fees and costs.

49

In its reply brief, Selective Way again offers little discussion of the attorneys' fees and costs of prosecuting the declaratory judgment action. Selective Way simply asserts that "equity" will be "trampled" if Selective Way is "compelled to pay the entirety" of Nationwide's attorneys' fees for "joint proceedings such as [p]retrial [c]onferences, hearings, [and] depositions" involving all defendants. Selective Way insists that the defendants owe contribution with respect to "these joint undertakings," which, according to Selective Way, resulted in "common costs and obligations."

On this issue, Selective Way's entire argument amounts to little more than an expression of disagreement. "'The most fundamental principle of appellate review [] is that the action of a trial court is presumed to have been correct and the burden of rebutting that presumption is on the party claiming error first to allege some error and then to persuade us that that error occurred.'" *White v. Pines Cmty. Improvement Ass'n*, 173 Md. App. 13, 50 (2007) (quoting *State v. Chaney*, 375 Md. 168, 183-84 (2003)), *aff'd in part, rev'd in part on other grounds*, 403 Md. 13 (2008). A party's appellate brief must include "[a]rgument in support of the party's position on each issue." Md. Rule 8-504(a)(6). This Court does not "'seek out law to sustain [an appellant's] position.'" *Rollins v. Capital Plaza Assocs., L.P.*, 181 Md. App. 188, 202 (2008) (emphasis omitted) (quoting *von Lusch v. State*, 31 Md. App. 271, 285 (1976), *rev'd on other grounds*, 279 Md. 255 (1977)). This Court is not obligated to address an issue where a party provides only conclusory statements without sufficient factual or legal support. *See Ochoa v. Dep't of Pub. Safety & Corr. Servs.*, 430 Md. 315, 328 (2013); *HNS Dev., LLC v. People's Counsel for Baltimore County*, 425 Md. 436, 459 (2012).

In its briefs, Selective Way has cited Maryland cases establishing general principles of equitable contribution. Selective Way has also cited out-of-state cases supporting the proposition that one primary insurer that pays more than its fair share of defense costs may have a right of contribution from other primary insurers. The authorities cited by Selective Way fail to establish that this right of contribution extends beyond those defense costs to include the attorneys' fees and expenses incurred by the insured or its subrogee in a separate action to establish that an insurer has a duty to defend the insured. Nor is such a conclusion implicit in the principles applied in these cases.

The premise of the contribution theory advanced here is that, when more than one insurer has the duty to defend the same insured, those insurers have a common obligation to pay the costs of defending a lawsuit against the insured. According to Selective Way, the defendant insurers shared a common liability with Selective Way for defense costs from the construction-defect lawsuit because each insurer had the same primary duty to defend Questar. We see little reason why this common liability should extend any farther. The defendant insurers did not, for instance, obligate themselves to pay costs that Questar might incur in establishing that another insurer independently breached a duty to defend Questar under a separate contract. Each insurer's liability, if any, for the attorneys' fees incurred in litigating its duty to defend follows from the insurer's breach of its own contract. *See Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. at 264; *Litz v. State Farm Fire & Cas. Co.*, 346 Md. at 232; *Allstate Ins. Co. v. Campbell*, 334 Md. 381, 393 (1994); *Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. 52, 66 (1993); *Bankers & Shippers*

51

*Ins. Co. of New York v. Electro Enters., Inc.*, 287 Md. 641, 648 (1980).

Selective Way has failed to articulate a theory under which the defendants might be liable for contribution with respect to its liability for the attorneys' fees and costs that Nationwide incurred in prosecuting the declaratory judgment action to establish that Selective Way breached its duty to defend. Consequently, Selective Way has failed to demonstrate any error in the circuit court's ruling regarding those fees and costs. The judgment is affirmed to the extent that the circuit court determined that Selective Way is not entitled to contribution towards its liability for the costs that Nationwide incurred in prosecuting the declaratory judgment action against Selective Way.

### III.   Ripeness Challenge

The appellate brief of American Home Assurance Co. purports to offer an "alternative ground" on which to affirm the circuit court's judgment. Beginning with the premise that the court "dismissed" the complaint, American Home invokes the principle that an appellate court may affirm a judgment "where the record in a case adequately demonstrates that the decision of the trial court was correct, although on a ground not relied upon by the trial court[.]" *Robeson v. State*, 285 Md. 498, 502 (1979). American Home contends that "dismissal" of the complaint was "proper" on the ground that Selective Way's contribution claims are not yet ripe.

In support of its argument, American Home cites *Heritage Harbour, L.L.C. v. John J. Reynolds, Inc.*, 143 Md. App. 698 (2002). In that case, the developers of a condominium project, after being sued for alleged construction defects, brought a separate action against other parties involved in the same construction project. *Id.* at 702-

03. The developers sought contribution and indemnification in the event that they might be found liable in the underlying litigation. *Id.* at 703. The trial court granted a motion to dismiss the complaint without prejudice, based on the failure to file a required certificate of qualified expert in support of their allegations of professional negligence. *Id.* at 703-04. This Court upheld the dismissal of the complaint without prejudice on that ground. *Id.* at 709.

This Court further concluded that the developers had "presented a non-justiciable claim" because their claim "was not yet ripe." *Heritage Harbour, L.L.C. v. John J. Reynolds, Inc.*, 143 Md. App. at 711. This Court reasoned that a right of action for contribution had not yet accrued because the developers had not yet made any payment to the plaintiffs in the underlying lawsuit. *Id.* at 712-13. This Court stated that the developers could not obtain "a declaration of [their] rights" on matters "which were 'future, contingent and uncertain.'" *Id.* at 713 (quoting *Hatt v. Anderson*, 297 Md. 42, 46 (1983)). For that additional reason, this Court held that the trial court had "properly dismissed" the action. *Heritage Harbour, L.L.C. v. John J. Reynolds, Inc.*, 143 Md. App. at 714. This Court explained that, although the Maryland Rules "explicitly permit" a defendant to pursue a "contingent claim" for contribution by asserting third-party claims within an underlying suit, the developers could not pursue their unripe, contingent claim in a separate action for declaratory relief. *Id.* at 714-15.

In its brief, American Home contends that Selective Way's contribution claim is not ripe. American Home explains that, even though Nationwide initially obtained a judgment against Selective Way, that judgment was partially reversed in *Selective Way*

53

*Insurance Co. v. Nationwide Property and Casualty Insurance Co.*, 242 Md. App. 688 (2019), *aff'd*, 473 Md. 178 (2021). The total amount of Selective Way's liability to Nationwide remains unadjudicated.

"[M]ore importantly," American Home states that, at the time of the circuit court's ruling, Selective Way "conceded that [it] still had not paid any amounts" to Nationwide. At the motions hearing in May 2021, counsel for Selective Way told the court that Selective Way had "tendered" the "judgment amount" to Nationwide. Counsel said that Selective Way was "ready, willing, and able to pay," and that it would make payment "as soon as" it received "payee information" from Nationwide. When questioned by this Court during oral arguments in October 2022, Selective Way's counsel declined to say whether Selective Way had actually paid anything to Nationwide.

The ripeness argument raised by American Home does not point toward any ground for upholding the judgment. The circuit court here did not dismiss the action without prejudice on the ground that a contribution claim was premature. Instead, the court granted judgment in favor of the moving defendants and issued a binding declaration stating that Selective Way "is not entitled to contribution" from the moving defendants "for a share of the judgment in favor of Nationwide against Selective Way" in Nationwide's declaratory judgment action. Because the court "rendered a declaratory judgment on the merits[,]" the ripeness challenge made by American Home "would not furnish an alternate ground for affirming the declaratory judgment." *Joseph H. Munson Co. v. Sec'y of State*, 294 Md. 160, 168 (1982), *aff'd*, 467 U.S. 947 (1984). "On the contrary," this ripeness argument "amounts to an attack upon the judgment." *Id.* If we

54

agreed with American Home's ripeness argument, then the proper remedy would be to vacate or reverse the judgment on the merits, with directions to dismiss the action without prejudice. *See id.*

Generally, "one who seeks to attack, modify, reverse, or amend a judgment (as opposed to seeking to affirm it on a ground different from that relied on by the trial court) is required to appeal or cross appeal from that judgment." *Paolino v. McCormick & Co.*, 314 Md. 575, 579 (1989). Neither American Home nor any of the other defendants filed a notice of appeal or cross-appeal. Thus, their ripeness challenge is not properly before this Court.

Some authority indicates, however, that the issue of ripeness is one that an appellate court may or should address on its own initiative. *See Smigiel v. Franchot*, 410 Md. 302, 319-20 (2009). In the interest of providing guidance to the parties and the trial court and in avoiding the expense and delay of another appeal (*see* Md. Rule 8-131(a)), some discussion of the ripeness issue is appropriate.

Some opinions have stated that, under Maryland law, a contribution claim does not accrue until the party seeking contribution has actually paid more than its fair share of an alleged common obligation. *See Heritage Harbour, L.L.C. v. John J. Reynolds, Inc.*, 143 Md. App. at 712-13 (stating that, under Maryland law, "'the rights both to indemnification and to contribution, whether based on contract or tort, accrue at the time of payment and not before'") (quoting *Southern Maryland Oil Co. v. Texas Co.*, 203 F. Supp. 449, 452-53 (D. Md. 1962)). Other opinions state that a contribution claim may accrue when a judgment is entered against the party seeking contribution. *See Haupt v.*

55

*State*, 340 Md. 462, 476 (1995) (stating that a claim for contribution "does not accrue until judgment has been entered against the party seeking . . . contribution"); *Ward Dev. Co., Inc. v. Ingrao*, 63 Md. App. 645, 662-63 (1985) (stating that "in Maryland, the right of contribution and indemnification accrues at the time a party 'suffers or pays a judgment or settles with the plaintiff'") (quoting *Read Drug & Chem. Co. of Baltimore City v. Colwill Constr. Co.*, 250 Md. 406, 422-23 (1968)). Selective Way argues that the statute of limitations on a contribution claim runs "from the time [the claimant] pays, or is ordered to pay[,]" another party in an underlying lawsuit. *Tadjer v. Montgomery County*, 61 Md. App. 492, 497 (1985) (discussing indemnity claim) (citing Annotation, *Contribution, Indemnity Claims—Timeliness*, 57 A.L.R.3d 867, 872 (1974)).[23]

Even under the alternative standard suggested by Selective Way, the contribution claim here is less than fully formed. The order requiring Selective Way to pay Nationwide does not have the force and effect of a final judgment. In the declaratory judgment action, the circuit court has determined that Selective Way is liable to Nationwide in the amount of $994,719.54 of attorneys' fees and other costs incurred in the construction-defect lawsuit. This Court upheld that determination, and the State's

---

[23] In the previous declaratory judgment action, the clerk recorded the entry of a "judgment" against Selective Way dated March 13, 2017. That order was not a final judgment in the action, because the court had not yet adjudicated the remainder of Nationwide's claim against Selective Way (Selective Way's liability for the costs and attorneys' fees that Nationwide had incurred because of Selective Way's breach of its duty to defend). Selective Way filed its complaint in the separate contribution action almost exactly three years later, on March 12, 2020. Selective Way appears to have acted to protect itself from the possibility that a three-year statute of limitations might run from March 13, 2017.

highest court denied Selective Way's petition for certiorari. The circuit court has yet to determine the amount of Selective Way's liability to Nationwide for the attorneys' fees and other costs incurred in prosecuting the declaratory judgment action. Eventually, Selective Way will be entitled to a reduction of $588,152.00 in the total amount of the judgment, to account for settlement payments made by other insurers.

American Home notes that "the record is unclear as to how various settling insurers' payments would be credited against any such judgment that may someday come into existence." In Nationwide's declaratory judgment action, the circuit court did not determine how much of the settlement payments should be credited against the defense costs from the construction-defect lawsuit and how much should be credited against the costs of prosecuting the declaratory judgment action. Consequently, the exact amount of Selective Way's share of the alleged common liability is unknown. Apparently, the court or the parties deemed it unnecessary to address that issue in an action solely involving Nationwide's claims against Selective Way.[24]

"[I]n some situations, the existence or nonexistence of ripeness is a question of degree." *Boyds Civic Ass'n v. Montgomery County Council*, 309 Md. 683, 691 (1987). Here, Selective Way's contribution claim, if valid, cannot be fully adjudicated if its exact share of defense costs is unknown. On the other hand, the allegation that Selective Way

---

[24] Most of Nationwide's settlement agreements allocate the payments between potential liabilities for the defense costs from the construction-defect lawsuit and potential liabilities for the costs of prosecuting the declaratory judgment action. Those settlement agreements are part of the record in this case, but were not before the trial court in the other case.

is under legal compulsion to pay nearly half of the alleged common liability for defense costs is not some hypothetical or uncertain possibility. A dismissal without prejudice might accomplish nothing other than creating unnecessary expense and delay for the parties (and potential complication of statute-of-limitations issues).

In their motions to dismiss, some but not all defendants asked the circuit court to stay the action until the underlying declaratory judgment action terminates in a final judgment and Selective Way pays the amounts owed to Nationwide. Because the circuit court decided that the defendants were entitled to a favorable judgment on the merits, the court did not decide whether it should stay the action. On remand, the court may reconsider a request to stay this action. The court may conduct appropriate proceedings to determine whether a judgment has been entered against Selective Way or whether Selective Way has made actual payment of what it alleges to be more than its fair share of the alleged common liability for defense costs in the construction-defect lawsuit against Questar. If either event occurs, no stay will be required.

As explained previously, in Part II above, we have upheld the circuit court's determination that Selective Way is not entitled to contribution from the defendants with respect to its liability for an undetermined amount of attorneys' fees and expenses incurred by Nationwide in prosecuting the declaratory judgment action. Thus, an adjudication of Selective Way's contribution claim will not require a payment of or a final adjudication of the amount of liability for those fees and expenses.

One remaining question is how much of the $588,152.00 settlement credit will be applied to Selective Way's liability for $994,719.54.54 of defense costs from the

58

underlying lawsuit. There is no guarantee that the circuit court in Nationwide's ongoing declaratory judgment action against Selective Way will ever address that question. This unanswered question almost exclusively concerns the ultimate amount of recovery under a contribution claim, if the claim is successful. This unanswered question does not necessarily affect the determination of whether or not Selective Way is entitled to contribution at all. In this case, the circuit court might proceed to decide whether Selective Way is or is not entitled to contribution from the defendants, even though the amount of Selective Way's ultimate liability to Nationwide might be unknown until the resolution of the Nationwide's declaratory judgment action.

## CONCLUSION

For the reasons set forth in this opinion, the judgment is affirmed in part and reversed in part.

The judgment is affirmed to the extent that the court determined that Selective Way has no right of subrogation and is not entitled to restitution.

The judgment is reversed to the extent that the court determined that Selective Way is not entitled to contribution from any defendant for defense costs from the construction-defect lawsuit, on the ground that the defendants no longer had any common liability with Selective Way after they settled with Nationwide. The scope of this reversal is limited to the grounds relied on by the circuit court, namely, that no common obligation existed because the defendants had reached settlement agreements with Nationwide. This reversal does not address any other grounds that were or may be raised by the defendants.

The judgment is affirmed to the extent that the court determined that Selective Way is not entitled to contribution from the defendants with respect to its liability for attorneys' fees and costs incurred by Nationwide in prosecuting the other declaratory judgment action.

Finally, under the circumstances, the court is not required to dismiss the action for lack of ripeness. The court should exercise its discretion in deciding how best to proceed. A stay of this action may or may not be appropriate. The court may proceed to resolve any issues in this action that do not depend on a final resolution of the separate declaratory judgment action between Nationwide and Selective Way.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE-HALF BY APPELLANT AND ONE-HALF BY APPELLEES.**